STATE of Missouri, Plaintiff-Respondent,

v.

Jerry Alan MAKENSON, Defendant-Appellant.

No. 13464.

Missouri Court of Appeals, Southern District, Division 2.

Oct. 4, 1984.

John Ashcroft, Atty. Gen., John M. Morris, Asst. Atty. Gen., Mary Elise Burnett (Rule 13), Jefferson City, for plaintiff-respondent.

David Robards, Public Defender, Joplin, for defendant-appellant.

MAUS, Judge.

The jury found the defendant guilty of robbery in the first degree. In accordance with the verdict, he was sentenced to imprisonment for 25 years. He presents three points on appeal. A very brief summary of the events will be sufficient for the consideration of those points.

The offense involved three men who were, on March 8, 1983, patrons or residents of Souls Harbor Mission in Joplin. They were the victim, Warren Hellman, 19 years of age, Forrest Wilson and the defendant. At about 9:30 p.m. that day, Hellman told Wilson he needed a ride to the bus station. Wilson agreed to give him that ride. As the two left the Mission, they were closely followed by the defendant. The three got in Wilson's two-door automobile. Wilson was in the driver's seat, Hellman in the front passenger seat and the defendant in the back seat behind Hellman. Wilson drove toward the bus station. As they approached, the defendant told him to keep going. Wilson did so. Hellman tried to get out of the moving automobile. The defendant placed a tire tool around Hellman's neck and forced him to stay in the automobile. Wilson drove to a cemetery in

the south part of Joplin. There Wilson and the defendant pulled off most of Hellman's clothing. The defendant beat and hit Hellman in the head with the tire tool. They took from the victim his bus ticket, most of his clothing, a buck knife, billfold and $3.15 in cash. The defendant kicked Hellman in the ribs and threw him in a ditch. After one abortive attempt, Hellman got out of the ditch. He walked to a nearby home. The police were called. Wilson was arrested at the Mission. The officers found the defendant asleep in the top bed of a bunk bed in the dormitory section of the Mission. He was awakened and arrested.

The envelope that had contained the bus ticket was on the right front floor board of Wilson's car, which was parked near the Mission. The tire tool was on the right rear floor board. The bus ticket was found behind a board that was tacked to the wall directly beside the bunk in which the defendant was sleeping. Hellman's clothing was found at 716 Kentucky Street in Joplin.

By his first point the defendant contends the trial court erred in admitting evidence of statements of Wilson implicating the defendant in the offense. By a written motion in limine, the defendant asked the trial court to exclude any alleged confessions or admissions of Wilson. The written motion made no reference to statements of Wilson. When the motion was heard, the defendant's counsel asked the court to preclude the prosecutor from referring to or asking his witnesses anything about Wilson's statements. The prosecutor then replied, "Your Honor, we don't intend to introduce any statements by the co-defendant, Wilson, except those that may have been made in the presence of the defendant." The defendant made no comment after this remark of the prosecutor. The court then announced, "That will be sustained."

The state introduced the testimony of three police officers that Wilson identified the defendant as a participant in the offense. It is not clear whether or not each officer referred to the same out-of-court identification. In each instance, it was first established the identification was made in the presence of the defendant.

The defendant contends this evidence was inadmissible as established in *State v. Degraffenreid*, 477 S.W.2d 57 (Mo. banc 1972). He acknowledges the tacit admission exception as delineated in *State v. Samuel*, 521 S.W.2d 374 (Mo. banc 1975). But, he argues that exception is not applicable because the defendant was under arrest at the time of the identification. He cites *State v. Samuel*, supra; *State v. Phelps*, 384 S.W.2d 616 (Mo.1964); *State v. Brydon*, 626 S.W.2d 443 (Mo.App.1981).

■■■ Had an objection been made, it may be conceded the admission of such evidence was error. Such out-of-court statements do not come within the scope of the defendant's written motion. In view of the comment of the prosecutor, it cannot be said the court sustained a motion in limine to exclude such statements of identification. Moreover,

> [t]he fact that the trial court sustained the pretrial motion in limine does not automatically result in a permanent exclusion of the references sought to be prohibited. The pretrial ruling is interlocutory only and additional information produced at trial may prompt the trial court to alter its pretrial ruling and admit the evidence.... Therefore, an objection must be made at trial when the evidence is offered or the reference made, preferably outside the hearing of the jury, in order to preserve for appellate review the ruling made thereon.

*State v. Evans*, 639 S.W.2d 820, 822 (Mo. 1982). Also see *State v. Fields*, 636 S.W.2d 76 (Mo.App.1982); *State v. Riggs*, 586 S.W.2d 447 (Mo.App.1979); *State v. Timmons*, 584 S.W.2d 129 (Mo.App.1979). The defendant made no objection when evidence of such statements was offered.

■■ Recognizing such failure, the defendant, in the alternative, urges the admission of these statements of identification be considered as plain error. He contends this is required because Hellman's identification of the defendant was severe-

ly impeached. Without so stating, the defendant is no doubt referring to lighting conditions during the occurrence and the fact Hellman said he suffered a loss of memory. After relating the incident, Hellman identified the defendant sitting at the counsel table as one of his assailants. He was then asked:

Q. Any doubt in your mind that that's the guy?

A. No doubt in my mind. That is him.

This court does not find that identification to have been severely impeached. Furthermore, the defendant identified himself as a participant by voluntarily exclaiming to an arresting officer: "That he didn't do it, the other guy did, and made him help." The admission of Wilson's statements is not found to have resulted in manifest injustice or a miscarriage of justice. *State v. Pennington,* 618 S.W.2d 614 (Mo.1981); *State v. Miller,* 604 S.W.2d 702 (Mo.App.1980); *State v. Timmons, supra.* The defendant's first point is denied.

The defendant next contends the trial court erred in admitting the tire tool in evidence. Hellman told the first investigating officer the implement put around his neck was a blue 6-inch handgun. On direct examination, he first said a jack handle was put around his neck. He later referred to the implement as a tire tool. He admitted the initial report of a handgun. He explained, "I just made a quick, more or less glanced at a blunt instrument." "I wasn't quite sure of it. I couldn't tell at that time that the blunt instrument was a tire tool or a handgun. I just saw a glimpse of it." He did identify the exhibit.

The implement is what is commonly referred to as a tire tool. It is not, however, an old fashioned lug wrench. It is a metal implement 12 inches long. It is in the form of an open cylinder. On one end there is fastened the socket that fits the lug or bolt. The socket is 4 inches long and is smaller than the cylinder. When not in use, it may be folded to fit in the open cylinder. When in use, the socket is pulled from the cylinder to extend at a right angle to it. The implement can then be used to loosen or tighten the lug. At the socket end of the implement, it is approximately 1½ inches in width. Commencing half way down the implement, it is tapered so the other end may be more easily grasped. There was no testimony concerning whether or not the socket was extended at the time of the offense. The implement is not wholly unlike the configuration of a 6-inch handgun.

The defendant contends the identification of the tire tool was so conflicting it was not sufficiently connected with the offense. The identification of a weapon need not be wholly unqualified. *State v. Edwards,* 574 S.W.2d 956 (Mo.App.1978). For example, the observation of "long, shiny metal objects" properly provides the basis for the admission of a sharpened screwdriver. *State v. Dodson,* 642 S.W.2d 641 (Mo.1982). The weight of the discrepancies in the description is for the jury. *State v. Cox,* 542 S.W.2d 40 (Mo.App.1976). "A weapon with which the crime might have been committed, found near the time and scene of the crime, is relevant to show the means by which the crime was committed." *State v. Dodson,* supra, at 643. Considering the implement and where it was found, the trial court did not err in admitting the tire tool as an exhibit.

By his last point, the defendant contends the trial court erred in submitting robbery in the first degree as there was no substantial evidence from which it could be found the tire tool was a dangerous instrument. A dangerous instrument is "any instrument, article or substance, which, under the circumstances in which it is used, is readily capable of causing death or other serious physical injury." § 556.061(8). Hellman suffered cuts on his head, he bled heavily, he had a slight concussion and loss of memory. He was hospitalized for a week or two. Whether or not Hellman suffered a serious physical injury is not determinative of the admissibility of the tire tool. It is whether or not that instrument, under the circumstances in which it was used, was readily capable of causing serious physical injury. By appropriate instructions, the issue was submitted to the

jury. The circumstances and the very nature of the tire tool and its use justified that submission. *State v. Goodman*, 496 S.W.2d 850 (Mo.1973); *State v. Davis*, 611 S.W.2d 384 (Mo.App.1981); *State v. Murphy*, 610 S.W.2d 382 (Mo.App.1980). The defendant's last point is denied and the judgment is affirmed.

PREWITT, C.J., HOGAN, P.J., and CROW, J., concur.