Timothy BUSHONG, Plaintiff-Appellant,

v.

MARATHON ELECTRIC MANUFAC-
TURING CORPORATION,
Defendant-Respondent.

No. 14219.

Missouri Court of Appeals,
Southern District,
Division One.

Sept. 15, 1986.

Motion for Rehearing or to Transfer
Denied Oct. 7, 1986.

Application to Transfer Denied
Dec. 16, 1986.

Daniel P. Wade, Wade & Haden, Rodney E. Loomer, M. Sean McGinnis, Turner, Reid, Duncan, Loomer & Patton, P.C., Springfield, for plaintiff-appellant.

Jeffrey H. Harrison, David A. Geisler, Springfield, for defendant-respondent.

FLANIGAN, Judge.

Plaintiff Timothy Bushong brought this action against defendant Marathon Electric Manufacturing Corporation for personal injuries allegedly sustained by plaintiff as a result of a collision involving a Mustang operated by plaintiff and a tractor trailer unit operated by defendant's employee, Orval Barks. At the conclusion of the five-day trial the jury returned a verdict in favor of defendant. Plaintiff appeals from the judgment entered on the verdict.

**830**

Plaintiff's first point is that the trial court erred in giving Instruction No. 7 at the request of defendant. Instruction No. 7 reads:

## "INSTRUCTION NO. 7

You must assess a percentage of fault to plaintiff, Timothy Bushong, if you believe:

First,

plaintiff, Timothy Bushong, failed to keep a careful lookout, or

plaintiff, Timothy Bushong, drove at an excessive speed, or

plaintiff, Timothy Bushong's automobile was on the wrong side of the road, and

Second,

plaintiff, Timothy Bushong, in any one or more of the respects submitted in paragraph First, was thereby negligent, and

Third,

such negligence of plaintiff, Timothy Bushong, directly caused or directly contributed to cause any damage plaintiff, Timothy Bushong, may have sustained."

Plaintiff's criticism of Instruction No. 7 is that there was insufficient evidence to submit those portions of paragraph First permitting the alternate findings that plaintiff "failed to keep a careful lookout" or "drove at an excessive speed," and that neither should have been submitted as an assignment of comparative fault. Further, with respect to each of those submissions, plaintiff claims that the evidence was insufficient to support the findings required by paragraph Third.

Seeking to uphold the giving of Instruction No. 7, defendant makes these alternative arguments: (a) the evidence was sufficient to support Instruction No. 7, and (b) even if the evidence was not sufficient, the error was not prejudicial.

The collision occurred on Highway 5 approximately one mile south of Hartville at approximately 9:30 p.m., July 8, 1982. Prior to the collision plaintiff Bushong was driving his Mustang generally north on the two-lane highway and defendant's tractor trailer unit, operated by Orval Barks, was proceeding generally south.

Bushong testified that he was traveling at approximately 40 miles per hour; as he proceeded into a right hand curve he observed the headlights of defendant's unit approaching from the north; defendant's unit was approximately half way into the curve with the left side of the tractor and trailer wheels located in the northbound lane; the truck was "just astraddle" of the center line; Bushong immediately applied his brakes and his car started sliding "in a straight direction for a ways"; the road was wet; after his car slid straight for a distance, "my car just turned across the center line"; Bushong's last recollection before the impact was that his vehicle was then approximately one car length from the tractor trailer unit.

Orval Barks testified that he was driving a tractor trailer unit, "an 18-wheeler," between 40 and 45 miles per hour. "I came into a curve which went to my right and then as I encountered the second curve the road turned to my left. The accident happened in the second curve. It was not raining but the road was damp. I was more than half way through the curve with the front of my truck when I first saw the Bushong vehicle. I was headed uphill. The Bushong vehicle was on its side of the road when I first saw its lights. When I first saw the Bushong vehicle it was 50 to 75 feet from me. From the time I first saw the Bushong vehicle lights until the two vehicles collided, approximately one second elapsed. I have no way to judge the speed of the Bushong vehicle. I saw Bushong's headlights, there was nothing unusual happening, I lost his headlights, I heard tires squealing, I saw tail lights coming at me. When I saw the tail lights they were in my lane. At that time the right rear corner of the Bushong vehicle was closest to me. The tail lights were about five feet from me when they appeared in my lane. When I saw the tail lights I applied my brakes as hard as I could. My

truck was in the right hand lane. The pavement was about 20 feet wide. At no time was I in the wrong lane. I was still in my own lane when the vehicles slowed and came to a stop."

Highway Patrolman Nielsen, who investigated the accident, testified that the impact occurred in the southbound lane and that Bushong's skidmarks commenced in the northbound lane but turned into the southbound lane prior to the impact.

■ When a verdict directing instruction submits in the disjunctive two or more assignments of negligence, the instruction is erroneous unless the evidence is sufficient to support all of the assignments. *Shelton v. Bruner,* 449 S.W.2d 673, 676[1] (Mo.App.1969). For the reasons which follow, this court holds that the trial court erred in giving Instruction No. 7 because the evidence was insufficient to support a finding that plaintiff failed to keep a careful lookout. It is unnecessary to consider whether the evidence was sufficient to support the alternate finding that plaintiff drove at an excessive speed.

In *Bunch v. McMillian,* 568 S.W.2d 809, 811[3–5] (Mo.App.1978), the court said:

"Negligence consisting of a driver's failure to keep a careful lookout is not to be submitted to the jury unless there is substantial evidence from which the jury could find that the driver, in the exercise of the highest degree of care to keep a careful lookout, could have seen the other vehicle or person in time thereafter to have taken 'effective precautionary action.' ... A lookout instruction submits failure to see and failure to avoid injury 'by "any means supported by the evidence." ' ... Although a lookout instruction need not hypothesize the means by which the driver, charged with failing to keep a careful lookout, could have avoided the collision, the evidence must support a finding that he possessed and failed to use such means....

'Having the means and ability to avoid a collision means not only the mechanical appliances, such as steering apparatus with which to swerve, signalling equip-

ment with which to warn, or braking appliances with which to slow down or stop, but also the existence of sufficient time and distance, considering the movements and speeds of the vehicles, to enable the party charged [with failure to keep a careful lookout] to take effective action in avoidance.' " (Citing authorities.)

■ Defendant had the burden of showing a causal connection between the submitted negligence, that is Bushong's failure to keep a lookout, and the injuries sustained and if the evidence leaves "the element of causal connection in the nebulous twilight of speculation, conjecture and surmise," *Shelton,* supra, 449 S.W.2d at 680, the burden was not met.

"The object and purpose of the strict requirement that persons operating motor vehicles keep a proper lookout upon public streets and highways is that they may acquire knowledge of the presence of other persons and objects on such streets and highways, and an awareness of *dangerous situations and conditions.* It is only because of that knowledge and awareness that the operators of motor vehicles may take appropriate precautionary measures to avoid injury to themselves and other persons *within an existing area of peril.*"

*Miller v. St. Louis Public Service Co.,* 389 S.W.2d 769, 771[2] (Mo.1965.) (Emphasis added.)

■ The duty to keep a careful lookout and the concomitant duty to take effective precautionary action do not arise at precisely the same moment. *Thomas v. Wade,* 361 S.W.2d 671, 674 (Mo. banc 1962); *Graham v. Conner,* 412 S.W.2d 193, 202 (Mo. App.1967). "The question then is, when does the duty to act arise? It is not necessarily at the exact time there was a duty to see.... [T]he duty to act when one does or should see arises at the time that a person, in the exercise of the highest degree of care, knew or should have known *that there was danger, that is, a likeli-*

*hood of injury." Thomas v. Wade, supra,* 361 S.W.2d at 674. (Emphasis added.)

■ Other cases are in accord. "[T]he purpose of the lookout duty is to apprise the operator of *danger." Page v. Baxter,* 503 S.W.2d 32, 34 (Mo.App.1973). (Emphasis added.) "It is necessary that in order to authorize the giving of an instruction on failure to keep a careful lookout, that substantial evidence be produced showing that the person charged with that negligence, in the exercise of proper care, could and should have seen the *danger of injury* in time thereafter to have taken available and effective precautionary action. *Zalle v. Underwood,* Mo., 372 S.W.2d 98, 102; *Allen v. Bi-State Development Agency,* Mo. App. 452 S.W.2d 288." *Young v. Grotsky,* 459 S.W.2d 306, 309 (Mo.1970) (Emphasis added). "In order to warrant or justify the submission of the failure to keep a proper lookout, it must be shown by one party that the other party could have seen the *danger of collision* in time to have taken evasive action." *Finninger v. Johnson,* 692 S.W.2d 390, 393–94 (Mo.App.1985).

Defendant's evidence was that at all times the tractor trailer unit was in its proper lane. Defendant adduced no evidence that the tractor trailer unit moved toward the center lane or toward its improper lane. Under defendant's evidence, the movements of the tractor trailer unit did not present a dangerous situation.

Defendant's brief argues, in support of the lookout submission, that Bushong "in the exercise of the highest degree of care should have seen defendant's truck in its proper lane of travel and avoided the accident by maintaining travel in his own lane." Defendant overlooks the fact that, with respect to the duty to maintain a lookout, no duty arose on the part of Bushong to take evasive action until he knew or should have known "that there was danger." That "danger" did not arise, under Barks' testimony, at any time prior to the moment when the two vehicles, converging at a combined speed of at least 80 miles an hour, were 75 feet apart. Even at that moment Barks observed "nothing unusual"

happening and, according to Barks, the collision occurred "approximately one second" after he first saw Bushong's lights.

■ Defendant points to testimony of Bushong to the effect that when Bushong first saw the headlights of the tractor trailer unit the vehicles were 200 feet apart and that Bushong could see that the tractor trailer unit was astraddle the center line, "about half way." Bushong's testimony concerning the tractor trailer unit's position on the highway was inconsistent with that of Barks and was at war with defendant's trial theory that the tractor trailer unit was at all times in its proper lane of the highway. Defendant is not entitled to avail itself of evidence in the plaintiff's case which is at war with defendant's proof or theory. *Calderone v. St. Joseph Light & Power Co.,* 557 S.W.2d 658, 664[7] (Mo. App.1977); *Kestner v. Jakobe,* 446 S.W.2d 188, 194[5] (Mo.App.1969).

Moreover, since the distance between the vehicles was closing at a combined rate of 80 miles per hour second, absent diminution of speed by either vehicle, the impact would have occurred in less than two seconds. Defendant offered no evidence with respect to what measures Bushong could have taken to have avoided the collision if the tractor trailer unit was in the position which Bushong described. His brief merely argues, as previously stated, that Bushong should have seen defendant's unit in its proper lane of travel and avoided the accident by maintaining travel in his own lane. There was no evidence, from the lookout standpoint, that Bushong could have seen the "danger" sooner than he in fact saw it or that, thereafter, he had the ability to take "effective precautionary action."

Instruction No. 7 injected a false issue of Bushong's failure to keep a careful lookout. That issue should have played no part in the jury's deliberations. The liability issue to be resolved by the jury was simply whether, as defendant claimed, defendant's unit was at all times in its proper lane and the collision was caused by Bushong's entry into defendant's lane or whether, as

plaintiff claimed, defendant's unit had crossed the center line, in turn causing plaintiff to apply his brakes, lose control, and enter the improper lane.

This court holds that the trial court erred in giving Instruction No. 7. It is now necessary to consider the merits of defendant's alternative contention that even if the evidence was insufficient to support the giving of Instruction No. 7, the error was not prejudicial. Other instructions given the jury are material to this inquiry.

Instruction No. 6, plaintiff's verdict directing instruction, reads:

## "INSTRUCTION NO. 6

Your verdict must be for plaintiff Timothy Bushong and you must assess a percentage of fault to defendant if you believe:

First, defendant's tractor trailer truck was on the wrong side of the road, and

Second, defendant's driver was thereby negligent, and

Third, as a direct result of such negligence, plaintiff Timothy Bushong sustained damage."

Instruction No. 8 reads:

## "INSTRUCTION NO. 8

If you find in favor of plaintiff Timothy Bushong, then you must determine the total amount of plaintiff Timothy Bushong's damages to be such sum as you believe will fairly and justly compensate plaintiff Timothy Bushong for any damages you believe he sustained and is reasonably certain to sustain in the future as a direct result of the occurrence mentioned in the evidence."

The verdict, in the opening portion of which the jury wrote "Marathon Elect.," reads:

## "VERDICT

Note: Complete this form by writing in the name required by your verdict.

On the claim of plaintiff Timothy Bushong against defendant Marathon Electric Manufacturing Corporation we, the undersigned jurors, find in favor of:

_____Marathon Elect._____

(Plaintiff Timothy Bushong) or (Defendant Marathon Electric Manufacturing Corporation)

Note: Complete the following paragraphs only if the above finding is in favor of plaintiff Timothy Bushong.

We, the undersigned jurors, find the total damages of plaintiff Timothy Bushong to be $_____ (stating the amount).

Note: Complete by writing in the percentage of fault you assess to each of those named below. If you believe any of those named below is not at fault, write in "zero" for that percentage. The total of the percentages you assess must be 100%.

We, the undersigned jurors, assess the percentages of fault as follows:

| | |
|---|---|
| Timothy Bushong | _____% |
| Marathon Electric Manufacturing Corporation | _____% |
| Total | 100% |

Note: All jurors who agree to above must sign below.

[Each of the jurors signed the verdict.]

---

Citing *Koch v. Bangert Bros. Road Builders, Inc.*, 697 S.W.2d 315 (Mo.App. 1985), and *Wilson v. Tabor*, 703 S.W.2d 4 (Mo.App.1985), defendant's brief states:

"In order for Instruction No. 7 to mean anything to the jury, the jury must be in a position where it is attempting to assess comparative fault. To be in such a position, the jury must, necessarily, find for the plaintiff under Instruction No. 6. When a defendant's verdict is reached, that means the jury found against plaintiff in Instruction No. 6 and plaintiff's comparative fault becomes meaningless. The jury never is to assess fault without finding for the plaintiff. The jury found against appellant under Instruction No. 6. There is no indication that the jury did anything other than follow the instructions. The Court must assume the jury followed the instructions.... Its verdict was in the proper form, finding for defendant without any marks or indications they ever considered comparative fault. Such verdict form was signed by all twelve jurors and accepted by the Court.... If the jury never considered the alleged errant instruction, then no prejudicial err has occurred, and this Court should affirm the judgment."

In *Koch* a wrongful death action was brought for the death of Ronald Koch, a truck driver, who was killed on a portion of a highway under construction. Defendants were Bangert Bros. Road Builders, Inc. and Millstone Construction, Inc., who were contractors responsible for setting up warning signs. The case was tried under the comparative fault theory enunciated in *Gustafson v. Benda*, 661 S.W.2d 11 (Mo. banc 1983). Bangert and Millstone gave similar instructions but only Bangerts's need be set forth.

Instruction No. 7, plaintiffs' verdict director against Bangert, instructed the jury that if they found in plaintiffs' favor they must assess a percentage of fault to Bangert.

At Bangert's request the court gave Instruction No. 8 and Instruction No. 9. Instruction No. 8, a converse instruction, read: "Your verdict must be for defendant unless you believe defendant was negligent as submitted in Instruction No. 7 and as a direct result of such negligence, plaintiffs sustained damage."

Instruction No. 9, applicable to plaintiffs' claim against Bangert, read:

"You must assess a percentage of fault to decedent Ronald Koch if you believe:

First, either:

decedent was driving a motor vehicle at a time when decedent was intoxicated to the extent that decedent's driving ability was impaired, or

decedent failed to keep a careful lookout, and

Second,

decedent, in any one or more of the respects submitted in Paragraph First, was thereby negligent, and

Third,

such negligence of decedent directly caused or directly contributed to cause the death of decedent."

Plaintiffs attacked Instruction No. 9 on the ground there was insufficient evidence to support a submission of decedent's failure to keep a careful lookout or that such failure was the proximate cause of the death. Rejecting plaintiffs' attack, the court of appeals said that the jury "obviously" found that Bangert was not guilty of any negligence that caused the damages sustained by the plaintiffs. "Therefore, it follows that any error in the instruction on the decedent's comparative fault was not harmful. If Bangert [was] not negligent, the decedent's negligence or lack of negligence is irrelevant.... The jury found that [Bangert was] not negligent. Mr. Koch's failure to keep a lookout thus became irrelevant. Any error in the lookout instruction was cured by the findings in favor of [Bangert]." *Koch* at 317.

The court also said that the jury "indisputably found" under Instruction No. 8 that Bangert was not negligent and "that finding made it unnecessary to consider the question of Koch's comparative fault." The court concluded it was unnecessary to consider the plaintiff's attack on Instruction No. 9.

In *Wilson,* plaintiff's verdict director, Instruction No. 5, told the jury that it "must assess a percentage of fault to defendant whether or not plaintiff was partly at fault," if the jury believed defendant was guilty of certain hypothesized acts of negligence and plaintiff was damaged as a direct result. At defendant's request the court gave Instruction No. 6 and Instruction No. 7.

Instruction No. 6 conversed plaintiff's verdict director and read: "You may not assess a percentage of fault to defendant unless you believe defendant [acted as hypothesized in Instruction No. 5.]"

Instruction No. 7 read, in pertinent part: "You must assess a percentage of fault to plaintiff Howard Wilson if you believe [the instruction then hypothesized negligent acts on the part of plaintiff contributing to the injury.]"

The verdict for defendant included: "[W]e assess percentage of fault as follows: Defendant Tabor 0%, plaintiff Wilson 100%."

Plaintiff complained that Instruction No. 7 gave the jury a roving commission to find plaintiff guilty of fault under two theories, one of which was not supported by the evidence. The court of appeals held it was not necessary to rule on plaintiff's criticism of Instruction No. 7 because any error was harmless.

Relying on *Koch* the court said, at pp. 6–7:

"The finding in favor of defendant on converse Instruction No. 6 cured any error in the giving of contributory negligence Instruction No. 7. The jury found defendant's percentage of fault to be zero, which amounts to a finding of no negligence under plaintiff's verdict director, and this is true even though the jury went further and found plaintiff to be 100% at fault. A different situation might be presented if the converse instruction had not been given, which would have then focused attention upon whether Instruction No. 7 gave the jury a roving commission to find an impermissible basis for plaintiff's contributory negligence. As it stands, the giving of Instruction No. 7 must be deemed to be harmless error, as in the analogous Koch case, supra."

In *Hritz v. Slawin,* 706 S.W.2d 296 (Mo. App.1986), Nancy Hritz, a minor, brought an action for personal injuries sustained when she was struck by defendant's car. Nancy's parents, as co-plaintiffs, sued on their derivative claim for loss of services. After a verdict for the defendant, the plaintiffs appealed and challenged Instruction No. 13 which was given at the request of the defendant.

Instruction No. 13 told the jury that on the claim of the parents "you must assess a percentage of fault against [the parents]" if the jury believed that the parents were negligent in the manner hypothesized. The plaintiffs claimed that Instruction No. 13 was erroneous "because it contained no finding that their negligence was the proximate cause of the injury." At p. 297 the court said:

"This case was tried under the doctrine of comparative fault. See *Gustafson v. Benda,* 661 S.W.2d 11 (Mo. banc 1983). There was evidence parents were negligent. In any event, any error in this instruction is harmless. The jury found defendant motorist not negligent. Parents' failure to supervise thus became irrelevant. Any error in this instruction was cured by the jury finding in favor of defendant motorist." (Citing *Koch.*)

On August 1, 1986, the Supreme Court of Missouri handed down opinions in two cases, *Lippard v. Houdaille Industries, Inc.,* 715 S.W.2d 491 (Mo. banc 1986), and *Barnes v. Tools and Machinery Builders, Inc.,* (No. 67805), 715 S.W.2d 518 (Mo. banc 1986). In *Lippard* the majority of the court held that the comparative fault principles of *Gustafson v. Benda,* supra, do not apply to "strict products liability cases." In *Barnes* the court encountered instruction problems similar to those here.

In *Barnes* plaintiff was injured by a seamer machine manufactured by defendant. The verdict was for defendant.

Plaintiff appealed, claiming the trial court erred in giving Instruction No. 8 at defendant's request.

Plaintiff's verdict director, Instruction No. 6, told the jury, "Your verdict must be for plaintiff and you must assess a percentage of fault to defendant if you believe ..." The instruction then required findings that defendant was seller of the machine, that it was defective when sold and was used in a manner reasonably anticipated and that plaintiff was damaged as a direct result of the defective condition.

On behalf of the defendant the court gave Instruction No. 7 and Instruction No. 8. Instruction No. 7 was a converse instruction, which told the jury that their verdict must be for the defendant unless they made the findings required by Instruction No. 6.

Instruction No. 8 reads:

"INSTRUCTION NO. 8

You must assess a percentage of fault against the plaintiff if you believe ... [The instruction then hypothesized acts of contributory fault on behalf of the plaintiff].

. . . . .

Fifth, such fault of the plaintiff directly contributed to cause any damage the plaintiff may have sustained.

The term 'fault' as used in this instruction means the failure to use that degree of care that an ordinarily careful and prudent person would use under the same or similar circumstances."

The verdict was on the form used in the case at bar. In the opening portion of the form the jury made a finding in favor of the defendant. In the bottom portion of the form the jury assessed percentages of fault as follows:

| | |
|---|---|
| Lucille Barnes | 100% |
| Tools and Machinery Builders, Inc. | 0% |
| TOTAL | 100% |

In an opinion by Judge Blackmar, with two judges concurring and two others concurring in the result, the court held that, under *Lippard,* the giving of Instruction No. 8 was error and that reversal would be required, "unless it can be said that [Instruction No. 8] did not contribute to the general verdict for the defendant."

The court pointed out that Instruction No. 6 required the jury to return a verdict for the plaintiff upon making the findings hypothesized in Instruction No. 6 and that Instruction No. 6 did not contain a "tail" referring to erroneous Instruction No. 8. The court said:

"The jury returned an unequivocal verdict for the defendant, actually writing in the defendant's name as prevailing party. We must assume that it followed its instructions and would have assessed a percentage of fault against the defendant if it had found that the four hypotheses were established. The jury must necessarily have concluded that the plaintiff did not establish at least one of these four propositions by proof meeting the required standard."

The court said that Instruction No. 7 was the only instruction directing the jury to return a general verdict for the defendant and that it was in proper form and that "the verdict responds to this instruction."

The plaintiff argued, unsuccessfully, that the definition of "fault" contained in Instruction No. 8 might have been used by the jury in connection with Instruction No. 6, but the court pointed out that the definition was expressly limited to Instruction No. 8 itself.

The court stated that Instruction No. 8 was not a proper submission of "contributory fault" because "it introduces negligence concepts." Rejecting plaintiff's argument that there was error in allowing the defendant to argue comparative fault and contributory negligence to the jury, the court said reversal was not required "because the jury found no basis for liability against the defendant and returned a general verdict for the defendant under instructions not dependent on Instruction No.

8. The additional finding that the plaintiff was 100% at fault is not necessary to the general verdict and may be disregarded as surplusage."

The court said: "The verdict shows that the jury made factual findings based on correct instructions which are entirely sufficient to support the judgment and that the erroneous instruction made no difference whatsoever."

■ The unmistakable theme of *Koch, Wilson, Hritz* and *Barnes* is that if a jury returns a general verdict in favor of the defendant, and there is no error in any instruction directing a verdict for the defendant, it is immaterial whether or not there is error in an instruction, offered by the defendant, submitting the issue of plaintiff's comparative fault. The rationale is that the jury would not reach the issue of comparative fault until it had first made a finding in favor of the plaintiff, which it did not do.

In *Koch* and *Wilson* the court felt it was unnecessary to examine the sufficiency of the evidence to support the comparative fault submission because, whether sufficient or not, the error was harmless. In *Barnes*, the supreme court took a step farther and found no reversible error in the giving of a comparative fault instruction in a type of case, products liability, where no such instruction should have been given at all.

It is true that in *Koch, Wilson* and *Barnes* the trial court, at defendant's request, gave a converse instruction, and in the case at bar no converse instruction was requested or given. Is this a significant distinction?

MAI 33.01 deals with converse instructions. See also the excellent article, "Converse Instructions under MAI," 42 Mo.Law Rev. 175 (Spring 1977), by Professor Elwood L. Thomas, reporter of the MAI committee. The converse instructions given in *Koch, Wilson* and *Barnes* were "true converse" instructions of the "unless you believe" type. Such an instruction "requires no independent evidence to support it. The

defendant's converse instruction rests upon his contention that the plaintiff has failed to prove some portion of his case; it is the device with which the defendant seeks to *emphasize* one or more of the elements of the case upon which the plaintiff has the burden of proof." MAI 33.01, p. 488. (Emphasis added.)

Professor Thomas says, at pp. 175–76 of his article:

"[The converse instruction] is certainly not essential in the package of instructions which goes to the jury. If the verdict director says, 'Your verdict must be for plaintiff if you believe plaintiff sustained damage,' *what does it add* to the jury's understanding to further instruct that 'Your verdict must be for defendant unless you believe plaintiff sustained damage'? The true converse instruction incorporates and thereby points to one or more elements of the verdict director and *reiterates the obvious result of the plaintiff failing to prove one or more of the elements of his verdict director.* Thus, it is obvious that the court could send a complete and logical set of instructions to the jury without including a converse instruction. In this respect, converse instructions are 'excess baggage' in the package of instructions which goes to the jury. The MAI system acknowledges this fact by making the use of converse instructions optional with the defendant." (Emphasis added.)

There is no requirement that defendant give a converse instruction and none was given in the case at bar. There was no instruction which directed a verdict for the defendant. Instruction No. 6 required the jury to return a verdict for plaintiff Bushong *and* assess a percentage of fault to *defendant* if the jury believed the findings required by Instruction No. 6. The jury did neither but found for the defendant.

Under Instruction No. 7, the challenged instruction, the jury was required to assess a percentage of fault to *plaintiff* if the jury made the various findings, some of

them alternative, required by Instruction No. 7. The jury made no such assessment.

Logically the issue of whether or not it was reversible error to give Instruction No. 7 should not hinge on the presence or absence of a converse instruction. A converse instruction was not necessary for the jury's deliberations. The jury could have reached this verdict with or without a converse instruction. If Instruction No. 7 was erroneous, the giving of it should not be cured by the giving of the converse instruction. A defendant should not be able to cure his own defective instruction by the simple expedient of also submitting a converse instruction. A cancer cannot be cured by a placebo.

This court concludes that the holdings in *Koch, Wilson* and *Barnes* should not be dependent upon the presence in those cases of a converse instruction. The latter merely "emphasized" or "reiterated" what the jury had already been told by the verdict director of each plaintiff. Although Judge Blackmar's opinion in *Barnes* received the full concurrence of only two other judges, two more judges did concur in the result. Although it was error, under the facts in Barnes, to give any comparative fault instruction, five judges did not deem the error reversible.

Judge Billings, one of the two dissenters, said:

> "As *Lippard* squarely holds, comparative fault simply has no place in a strict liability case. And, contrary to the principal opinion, I cannot be as confident that Instruction No. 8 did not prejudice the outcome of the case—particularly, when it provided the springboard for defendant to argue comparative fault and contributory negligence to the jury."

None of his brethren concurred with that remark and the votes of five of them clearly indicate non-concurrence.

In the case at bar Instruction No. 7 was erroneous. Although Instruction No. 7 might be viewed as one dealing solely with the issue of the amount of damages, and not liability, its ingredients deal with Bushong's *conduct*, not merely with his injuries.

During the final argument of defense counsel he discussed Instruction No. 7. In that discussion, which occupies more than two pages of the transcript, counsel was clearly arguing the issue of liability, not merely that of comparative fault in the event the jury found for plaintiff under his verdict director. It would be anomalous to hold that if this situation amounted to reversible error, it would have been cured by the mere giving of a converse instruction.

It is not sound to say that the fact that counsel argued the defective instruction created the error which, in the absence of such argument, would not exist. The argument merely served to exacerbate the instruction error, not to create it. Failure to make any argument on a defective instruction should not serve to heal the defect. A defective instruction, although accompanied by silence on the part of counsel, remains a defective instruction.

■ This court holds that the fact that no converse instruction was given here and the fact that counsel argued Instruction No. 7 do not distinguish this case materially from the holding in *Barnes* and, under the constraint of the latter, this court reaches the reluctant conclusion that although Instruction No. 7 was not supported by the evidence and was erroneous, the error was not reversible. Plaintiff's first point has no merit.

Plaintiff's second point is that the trial court erred "in admitting into evidence the result of a blood alcohol test given plaintiff subsequent to the accident, and testimony indicating plaintiff had been drinking and had the smell of beer on his breath [on] the day of the accident, in that defendant failed to establish said evidence as a contributing factor or as a proximate cause of the accident." It is unnecessary to determine whether the point as stated would have been meritorious if it had been preserved for appellate review because, for the reasons which follow, it was not so preserved.

Prior to the trial plaintiff filed a "Motion in Limine," in which he sought an order of the trial court precluding defendant's coun-

sel from mentioning, at any stage of the trial, various matters, and from introducing evidence concerning those matters. Among the matters sought to be suppressed were the following: (1) the administration of a blood alcohol test on plaintiff at St. John's Regional Health Center at approximately 12:30 a.m. on July 9, 1982, or the result of that test; (2) beer had been consumed by plaintiff on the afternoon of July 8, 1983, and (3) plaintiff "had alcohol on his breath." The trial court, in a pretrial order, overruled the motion with respect to the foregoing items.

On the morning of the trial, and before the veniremen were called in for voir dire, plaintiff's counsel, Rodney Loomer, orally renewed the motion with respect to the three items, and the trial court denied the oral motion. The voir dire examination is not included in the record on appeal and plaintiff makes no claim that defense counsel mentioned any of the three topics during voir dire.

Mr. Loomer, during his opening statement for the plaintiff, made the following comments: "That afternoon [of the day of the accident] Tim ... ran into John Greichen ... and they were friends.... After John got off work [John and Tim] went for a ride ... and ... John ... bought some beer. The evidence will be Tim consumed three of those beers.... After they had driven back to the square they saw various individuals ... Brad Mackey ... Leslie Adamson ... Jeannie Fann.... They will testify that Tim did nothing out of the ordinary, did not have bloodshot eyes, did not slur his speech, did not stagger, that they noticed nothing unusual about him.... They will testify Tim was not drunk, not showing any effect of alcohol.... The evidence will be that some time before 7:00 o'clock that evening ... Tim went home ... and had dinner with his mom and dad.... There will be testimony that they noticed nothing unusual about Tim—didn't—was not in any way intoxicated.... After Tim had dinner he ... showered ... put on some clean clothes ... and ... headed towards Hartville.... On the way he stopped at an Apco station and ...

Saundra Turley ... talked to Tim.... She will testify that she got up, talked to Tim, got into his face, put her arm around him, and that she noticed nothing unusual about him, did not smell any alcohol on his breath, and his eyes were not bloodshot and that when he walked away he was not staggering or stumbling around. There was nothing unusual about him."

After outlining plaintiff's evidence concerning the collision itself, the arrival of the ambulance, the highway patrol, and others at the scene, and the taking of the badly injured plaintiff to the hospital in Springfield, Mr. Loomer then told the jury: "At the hospital in Springfield ... Stephanie McKinley, who was the critical care nurse ... received an order from the doctor to do certain work and ... numerous items of blood work was (sic) done. One of them included a blood test that would determine the extent of foreign substances or objects such as alcohol and that in fact a test was performed and the result was .106 or one-tenth of one percent by volume or weight."

During the presentation of plaintiff's case, on direct examination, plaintiff introduced the evidence of the foregoing witnesses and they testified substantially as outlined in the opening statement. Plaintiff's witness Norman Wall, M.D., on direct examination, testified that the blood test was administered and that the witness did not "at any time smell alcohol on Tim's breath." The plaintiff himself, on direct examination, testified that he drank three cans of beer during the afternoon, that he arrived home at 7:00 p.m., that he did not drink "any more alcohol of any nature," and that his "drinking the three beers that afternoon did not cause him to imagine that defendant's truck was in his lane at the time of the collision."

From the foregoing it is clear that plaintiff, as part of his case-in-chief, tried to show the jury that although he had consumed three beers several hours prior to the accident, he drank no alcohol after 7:00 p.m. and his driving was not impaired by

reason of his earlier consumption of the three beers. Although plaintiff did not introduce into evidence the result of the blood test during his case-in-chief, he did introduce evidence that the test was administered, and in his opening statement plaintiff's counsel told the jury the result.

In his argument under his second point, plaintiff makes no mention of any specific questions asked by defense counsel of any witness, or any objection made to the question or any ruling of the court. Although plaintiff's point does not say so, what plaintiff is really attempting to do, by his second point, is to obtain appellate review of the trial court's ruling on plaintiff's motion in limine. The record will not permit such review.

Many of the principles demonstrating that plaintiff's second point has not been preserved for appellate review are stated in *Anderson v. Rojanasathit*, 714 S.W.2d 894 (Mo.App.1986). In that case Roger Anderson, a minor, and his mother Michele Parks, brought a medical malpractice action against doctors and a health clinic for alleged negligence in failing to prevent Roger's contraction of a viral herpes condition at birth. Prior to the trial plaintiff's counsel, by a motion in limine, sought to exclude any evidence of (1) Michele's use of cocaine prior to her pregnancy with Roger, and (2) the fact that Roger's father, Roger Parks, had previously pleaded guilty to burglary. The trial court denied the motion. At the trial *plaintiff's* attorney directly questioned Michele about her drug use and directly questioned Roger Parks about his guilty plea. The jury returned verdicts in favor of all the defendants.

On appeal the plaintiffs contended that the trial court erred in overruling the motion in limine and that the rulings on the motion "forced a trial strategy which elicited the undesirable information during direct examination."[1] Rejecting plaintiffs' contention the court said, at p. 895:

"Generally, a motion in limine preserves nothing for review. *State v. Hurd*, 657 S.W.2d 337, 341 (Mo.App. 1983). A pretrial ruling is interlocutory only and is subject to change when additional information is produced at trial. *Anin v. Bi-State Development Agency*, 657 S.W.2d 382, 385 (Mo.App.1983). Therefore, after a denial of a motion in limine, an objection must be made at trial to preserve the point for appellate review. *State v. Makenson*, 679 S.W.2d 427, 429 (Mo.App.1984).

In the case before us, the disputed evidence was introduced during direct examination of Michele and Roger Parks. A party may not complain about matters he brings before the jury. *Frye v. Meramec Marina*, 673 S.W.2d 451, 454 (Mo. App.1984). By eliciting direct testimony of Michele's cocaine use and Roger Parks' prior offenses, plaintiffs waived their right to challenge the admissibility of such testimony. A party cannot take advantage of self-invited error. *State v. Kelly*, 689 S.W.2d 639, 640 (Mo.App. 1985)."

Similarly in *Peters v. Henshaw*, 640 S.W.2d 197 (Mo.App.1982), Gene Peters filed a wrongful death action for the death of his wife Sharon. Appealing from a judgment in favor of one of the defendants, Peters argued that the trial court erred in overruling his motion in limine "to prevent the other parties from informing the jury that he had remarried." The court overruled the motion prior to trial but Peters' counsel told the jury panel during voir dire that Peters had remarried. At p. 201 the court said:

"Peters takes the position that revealing the very information to the jury which he had sought to suppress does not prevent him from contending on this appeal that the court erred in overruling the motion in limine.

It is well settled ... that after the denial of a motion in limine, a timely

---

**1.** During oral argument of the instant appeal, counsel for plaintiff Bushong stated that plaintiff injected the matter of beer drinking into the case, after the trial court had made its ruling on the motion in limine, "as a matter of trial strategy."

objection at trial is required to preserve the point for appellate review.

. . . . .

To preserve any error in this regard, Peters was required to await an attempt of his adversary to introduce the evidence of his remarriage and then to object at that time. However, Peters chose to reveal his remarriage himself, and thus the situation never arose in which he was required to object to an attempt by [defendants] to convey this information to the jury. Since the overruling of the motion in limine cannot in and of itself be the basis of reversible error, Peters has not preserved any error for review on this point."

Plaintiff may not complain of the admission into evidence of the result of the blood test because plaintiff's counsel himself conveyed that information to the jury during his opening statement. See *Wilson v. Lockwood,* 711 S.W.2d 545, 552 (Mo.App. 1986). "[A] party who has introduced evidence concerning a certain fact may not on appeal complain that his opponent was allowed to introduce related evidence, in rebuttal or explanation." 5 Am.Jur.2d App. and Err., § 716, p. 163.

Plaintiff, during his case-in-chief, introduced evidence concerning his drinking, and the fact that, at various times according to plaintiff's witnesses, there was no smell of alcohol on his breath. Plaintiff may not complain of evidence offered by the defendant in rebuttal of plaintiff's own evidence. The principle is illustrated in *Vanneman v. W.T. Grant Company,* 351 S.W.2d 729, 731 (Mo.1961), where the court said: "Plaintiff, by offering evidence concerning the ·good things about the family, cannot now complain because the opposing party offered evidence to the contrary. The sour must be taken with the sweet." See also *Watson v. Landvatter,* 517 S.W.2d 117, 122[8, 9] (Mo. banc 1974).

The judgment is affirmed.

GREENE, P.J., and TIMOTHY D. O'LEARY, FOREST W. HANNA, PHILIP G. HESS and DONALD BARNES, Special Judges, concur.