Lucille **BARNES**, Appellant,

v.

**TOOLS & MACHINERY BUILDERS, INC.**, Respondent.

No. 67805.

Supreme Court of Missouri, En Banc.

Aug. 1, 1986.

Rehearing Denied Sept. 16, 1986.

James F. Koester, Kenneth D. Koester, St. Louis, for appellant.

Paul S. Brown, Gary E. Snodgrass, St. Louis, for respondent.

Michael W. Manners, Independence, for amicus (Mata).

W. James Foland, Ted R. Osborn, Kansas City, for amicus (Mo. Organization of Defense Lawyers).

BLACKMAR, Judge.

This case was consolidated for argument with *Lippard v. Houdaille Industries, Inc.*, 715 S.W.2d 491 (Mo. banc 1986) adopted this day.

The plaintiff brought an action to recover for the loss of her hand, which was crushed in a seamer machine manufactured by the defendant Tool and Machinery Builders, Inc., and sold to the plaintiff's employer. This machine attaches and seals tops or bottoms to cans. The plaintiff was injured when a turret on the machine started to turn while she was cleaning it. She sought to show by evidence that various safety devices could have been provided so that the drive mechanism would not function when the protective lid was open, or a warning would have sounded a few seconds before the machine could be started. The defendant argued that the provided stop buttons and disconnect switch were sufficient to make the machine safe for cleaning.

The plaintiff submitted her case by means of the following verdict directing instruction:

### INSTRUCTION NO. 6

Your verdict must be for plaintiff and you must assess a percentage of fault to defendant if you believe:

First, defendant sold the seamer machine in the court of defendant's business, and

Second, the seamer machine was then in a defective condition unreasonably dangerous when put to a reasonably anticipated use, and

Third, the seamer machine was used in a manner reasonably anticipated, and

Fourth, plaintiff was damaged as a direct result of such defective condition as existed when the seamer machine was sold.

The instruction is based on MAI 25.04, modified only by the addition of the phrase, "and you must assess a percentage of fault to the defendant."

The court gave a converse instruction specifying the circumstances under which the defendant would be entitled to a verdict. This instruction reads as follows:

### INSTRUCTION NO. 7

Your verdict must be for defendant unless you believe the seamer machine when sold to Boise Cascade was in a defective condition unreasonably dangerous when put to a reasonably anticipated use and plaintiff was damaged as a direct result of such defective condition as existed when the seamer machine was sold.

The court also gave Instruction No. 8, reading as follows:

You must assess a percentage of fault against the plaintiff if you believe:

First, at the time of the occurrence mentioned in the evidence there was a risk that the seamer machine would operate unless the main power switch was turned off or unless either of the two red control buttons was pushed, and

Second, plaintiff Lucille Barnes knew or should have known of that risk before undertaking to wipe oil or grease from the seamer machine, and

Third, plaintiff Lucille Barnes undertook to wipe oil or grease from the seamer machine without either turning off the main power switch or pushing either of the two red control buttons, and,

Fourth, in any of the respects mentioned in paragraph Third above, plaintiff was at fault, and

Fifth, such fault of the plaintiff directly contributed to cause any damage the plaintiff may have sustained.

The term 'fault' as used in this Instruction means the failure to use that degree of care that an ordinarily careful and prudent person would use under the same or similar circumstances.

This instruction borrows some concepts from MAI 32.23 (contributory fault—strict products liability cases), but goes beyond that instruction and introduces concepts of the plaintiff's negligence. The case, then, was submitted to the jury on the basis of comparative fault.

The jury returned a verdict as follows:

VERDICT _____

NOTE: Complete this form by writing in the name required by your verdict.

On the claim of plaintiff Lucille Barnes against defendant Tools and Machinery Builders, Inc. we, the undersigned jurors, find in favor of:

_____
(Plaintiff Lucille Barnes)

/s/ Tools & Machinery
Builders, Inc.
OR (Defendant Tools and Machinery Builders, Inc.)

NOTE: Complete the following paragraphs only if the above finding is in favor of plaintiff Lucille Barnes.

We, the undersigned jurors, find the total damages of plaintiff Lucille Barnes to be as follows:

For personal injuries $_____ (stating the amount or, if none, write the word, "none").

NOTE: Complete by writing in the percentage of fault you assess to each of those named below. If you believe any of those named below is not at fault, write in 'zero' for that percentage. The total of the percentages you assess must be 100%.

We, the undersigned jurors, assess the percentages of fault as follows:

| | |
|---|---|
| Lucille Barnes | 100% |
| Tools and Machinery Builders, Inc. | 0% |
| TOTAL | 100% |

---

The trial judge denied the plaintiff's post-trial motions and entered judgment for the defendant. The plaintiff appealed. We took the case on transfer from the Court of Appeals, and now affirm. We make use of some portions of Judge Snyder's opinion, without quotation marks.

The giving of Instruction No. 8 was error, under our *Lippard* opinion. Unless it can be said that this instruction did not contribute to the general verdict for the defendant reversal would be required.

■ The plaintiff's problem is that Instruction No. 6 is a full and complete verdict director which commands the jury to return a verdict for the plaintiff if it finds the four facts there hypothesized. It contains no "tail" referring to erroneous Instruction No. 8. The jury returned an unequivocal verdict for the defendant, actually writing in the defendant's name as prevailing party. We must assume that it followed its instructions and would have assessed a percentage of fault against the defendant if it had found that the four hypotheses were established. The jury must necessarily have concluded that the plaintiff did not establish at least one of these four propositions by proof meeting the required standard.

Instruction No. 7 provides the only direction to the jury to return a general verdict for the defendant. It converses two of the four propositions of Instruction No. 6. The instruction properly told the jury that unless it believed both propositions, it must find for the defendant. The verdict responds to this instruction.

The plaintiff argues that erroneous Instruction No. 8 defines "fault" in terms of negligence and that the jury very likely made use of this definition in connection with Instruction No. 6. The difficulty with this argument is that the definition of fault in Instruction No. 8 is expressly limited to that instruction. Instruction No. 6 cannot possibly be read as requiring the jury to find that the defendant was negligent before the jury could find for the plaintiff. It correctly tells the jury that it must assess a percentage of fault against the defendant if it finds that the four essential elements of a strict products liability claim have been established. Neither instruction contains a cross-reference to the other.

■ Instruction No. 8 does not represent a proper submission of "contributory fault" as presently authorized by MAI 32.-23, because it introduces negligence concepts. The plaintiff argues that there was error in allowing the defendant to argue comparative fault and contributory negligence to the jury. Reversal is not required, however, because the jury found no basis for liability against the defendant and returned a general verdict for the defendant under instructions not dependent on Instruction No. 8. The additional finding that the plaintiff was 100% at fault is not

necessary to the general verdict and may be disregarded as surplusage.[1]

Error in instruction has traditionally been held to be ground for reversal only if it can be demonstrated that the error could have contributed to an erroneous verdict. Recent examples in this Court include *State v. McIlvoy*, 629 S.W.2d 333 (Mo. banc 1982), in which alleged error in second degree murder and manslaughter instructions were held to be without prejudice because the jury found the defendant guilty of capital murder. In *State v. Buckles*, 636 S.W.2d 914 (Mo. banc 1982), claims that the evidence did not support the submission of first degree murder and that the first degree murder instruction was erroneous were not considered because the jury found guilt only of murder in the second degree.

Similarly, we have refused to reverse cases in which the plaintiff received a verdict but contested the damages awarded because of alleged error in a contributory negligence instruction. *Kohler v. McNeary*, 498 S.W.2d 796 (Mo.1973); *Haley v. Byers Transportation Company*, 414 S.W.2d 777 (Mo.1967). In the latter case, we found plaintiff's contention that the giving of a contributory negligence instruction and attendant argument might have influenced the jury's determination of damages to be too speculative. Any such argument in this case regarding Instruction No. 8 would be equally speculative. The verdict shows that the jury made factual findings based on correct instructions which are entirely sufficient to support the judgment and that the erroneous instruction made no difference whatsoever. The burden is on the defendant to demonstrate prejudicial error.

Examination of the closing arguments demonstrates,[2] moreover, that the plaintiff was not prejudiced. Her counsel sought to take advantage of the comparative negligence instruction given by the court, by arguing as follows:

> If you find that the company was at fault in any degree or any percentage or to any extent, she must get a verdict, and it is up to you to set the percentage.

This argument is based on Instruction No. 6, which provides the only authority for assessing a percentage of fault against the plaintiff, and does not require a finding of negligence. The verdict shows that the jury rejected the argument.

The defendant conceded that cleaning was a normal use of the machine, but argued that the machine was not unreasonably dangerous because switches were available to the operator to shut it off while it was being cleaned. Defendant also argued that the plaintiff's claim that she had not been told about the switches was unworthy of belief. No objection was made to these portions of the argument, and we see no reason why the argument would not be appropriate in a case not encumbered by an erroneous contributory fault instruction. The defendant is entitled to argue that the product contains sufficient safety devices so that it is not unreasonably dangerous and also that the alleged defects did not cause the accident.

There is no abstract impropriety in the defendant's arguing that the plaintiff was at fault. The plaintiff must demonstrate that the defendant's product was in a "defective condition unreasonably dangerous" and that she was damaged as a "direct result of such defective condition." If the jury is persuaded that the product was so designed that the plaintiff could easily avoid the accident, it might conclude that the required tests of defect and unreasonable danger had not been met.

---

1. We would reject any suggestion that MAI 32.-23 be modified to provide for a reduction of the award, rather than a bar to recovery, if the jury finds the facts there hypothesized. We would not follow *Austin v. Raybestos-Manhattan Inc.*, 471 A.2d 280 (Me.1984); *Suter v. San Angelo Foundry and Mach. Co.*, 81 N.J. 150, 406 A.2d 140 (1978).

2. No objection to the argument pertinent to the point here discussed was made. This may not be fully determinative, because the court had already decided on the instructions, but we note that no particular prejudicial matter is highlighted in the argument or in the brief.

We assume that juries follow instructions and that they are not diverted by inappropriate considerations. The judgment when examined in the light of Instructions 6 and 7, properly reflects the jury's finding. The trial court gave Instruction No. 8 because of uncertainties in the law. *Cf. Lippard, supra.* There would be no occasion for giving an instruction similar to Instruction No. 8 in any future case, now that we have decided the governing issue, and our opinion of course is not authority for doing so.

■ Appellant asserts error because the trial court sustained the defendant's objection to the plaintiff's closing argument about the possibility that a co-worker may have pushed (should have read 'pulled') an emergency control to start the seamer machine while appellant was cleaning it. There was, in fact, no ruling by the court upon the objection. Appellant's lawyer argued that 'somebody must have pulled the button to—.' There was an objection, but the court merely responded by saying the jury would be guided by the evidence, after which counsel for appellant again argued that somebody must have activated the machine. Because there was no ruling, there is no error.

We conclude that the jury knew exactly what it was doing and that it simply was not persuaded that the plaintiff had established her case. The judgment is affirmed.

HIGGINS, C.J., and RENDLEN, J., concur.

WELLIVER, J., concurs in result.

ROBERTSON, J., concurs in result in separate opinion filed.

DONNELLY, J., dissents.

BILLINGS, J., dissents in separate opinion filed.

ROBERTSON, Judge, concurring in result.

For the reasons expressed in my Opinion Concurring in Result in *Lippard v. Houdaille Industries, Inc.,* 715 S.W.2d 491 (Mo. banc 1986), adopted this day, I concur in the result reached in the principal opinion in this case.

BILLINGS, Judge, dissenting.

I dissent.

The principal opinion recognizes that Instruction No. 8 "introduces concepts of the plaintiff's negligence" and that the case was "submitted to the jury on the basis of comparative fault." Nevertheless, the opinion concludes there was no prejudice to plaintiff.

As *Lippard* squarely holds, comparative fault simply has no place in a strict liability case. And, contrary to the principal opinion, I cannot be as confident that Instruction No. 8 did not prejudice the outcome of the case—particularly, when it provided the springboard for defendant to argue comparative fault and contributory negligence to the jury.

I would reverse and remand the case for a new trial under instructions applicable to a strict liability case.

DONNELLY, Judge, dissenting.

In 1971, the philosopher John Rawls published his awesome contribution to the subject of distributive justice. J. Rawls, *A Theory of Justice* (Cambridge, Mass.: Harvard University Press, 1971).

Rawls' aim was "to present a conception of justice which generalizes and carries to a higher level of abstraction the familiar theory of the social contract as found, say, in Locke, Rousseau, and Kant." In Rawls' words:

In justice as fairness the original position of equality corresponds to the state of nature in the traditional theory of the social contract. This original position is not, of course, thought of as an actual historical state of affairs, much less as a primitive condition of culture. It is understood as a purely hypothetical situation characterized so as to lead to a certain conception of justice. Among the essential features of this situation is that no one knows his place in society, his

class position or social status, nor does any one know his fortune in the distribution of natural assets and abilities, his intelligence, strength, and the like. I shall even assume that the parties do not know their conceptions of the good or their special psychological propensities. The principles of justice are chosen behind a veil of ignorance. This ensures that no one is advantaged or disadvantaged in the choice of principles by the outcome of natural chance or the contingency of social circumstances. Since all are similarly situated and no one is able to design principles to favor his particular condition, the principles of justice are the result of a fair agreement or bargain. For given the circumstances of the original position, the symmetry of everyone's relations to each other, this initial situation is fair between individuals as moral persons, that is, as rational beings with their own ends and capable, I shall assume, of a sense of justice. The original position is, one might say, the appropriate initial status quo, and thus the fundamental agreements reached in it are fair. This explains the propriety of the name "justice as fairness": it conveys the idea that the principles of justice are agreed to in an initial situation that is fair. * *."

Rawls, *A Theory of Justice*, pp. 11–12.

The holding in *Lippard v. Houdaille Industries, Inc.*, 715 S.W.2d 491 (Mo. banc 1986) fails Rawls' test of fairness. According to *Lippard*, A and B, if in Rawls' "original position," would say, each to the other: "If you become a manufacturer and sell a defective product which injures me, you, not I, will be responsible for my damages—*even those I cause.*" I cannot agree. In my view, A and B, if in Rawls' "original position," would say, each to the other: "If you become a manufacturer and sell a defective product which injures me, each of us shall bear responsibility in proportion to his fault."

In 1969, in *Keener v. Dayton Electric Mfg. Co.*, 445 S.W.2d 362 (Mo.1969), this Court addressed the products liability prob-lem and adopted the rule of strict liability in tort stated in 2 Restatement, Law of Torts, Second, § 402A.

I think it must be said now that *Keener* is a failed attempt at fairness. Given its ultimate distortion by the holding in *Lippard*, *Keener* should be expressly overruled. I would make such abrogation prospective as to all claims arising on or after September 28, 1987, except for the cases decided today as to which I would apply abrogation here and now. *See Jones v. State Highway Commission*, 557 S.W.2d 225, 231 (Mo. banc 1977).

I dissent.