Ivan E. WILSON and Betty J. Wilson, Appellants,

v.

Edgar L. SHANKS, Respondent.

No. 72127.

Supreme Court of Missouri, En Banc.

March 13, 1990.

---

J. Michael Murphy, Liberty, for appellants.

Thomas E. Allen, Liberty, for respondent.

HOLSTEIN, Judge.

Plaintiffs Ivan E. Wilson and Betty J. Wilson filed suit against defendant Edgar L. Shanks claiming damages for personal injuries to Ivan E. Wilson and loss of consortium to his wife, Betty J. Wilson, arising out of an automobile accident that occurred in the early morning hours of January 6, 1985. Following a jury trial, a verdict was returned assessing Ivan Wilson's fault at 100% and assessing no fault to defendant. From a judgment entered on the verdict, plaintiffs appealed to the Missouri Court of Appeals, Western District. This Court granted transfer.

Three claims of error are raised on appeal; (1) the trial court gave an erroneous contributory fault instruction, (2) defendant was permitted to cross-examine plaintiffs' physician by having the physician read from a report made by a consulting physician, and (3) defendant was permitted to testify that he did not take any field sobriety tests or a breathalyzer test following the accident.

The accident occurred on a two-lane rural road that runs generally east and west at the scene of the accident. The road was snow and ice covered on the night of the accident. Plaintiffs' sixteen-year-old son had been driving a Honda automobile in an easterly direction on the road just after 11:00 p.m. on January 5, 1985. Upon cresting a hill, he met an approaching vehicle. The youth swerved to avoid a collision. In doing so, his car ended up stuck in a ditch on the south side of the road about twenty-five feet east of the hilltop. The Wilsons' son caught a ride home and explained the situation to his father.

Shortly after midnight, Mr. Wilson and his son returned to where the car was stuck driving Mr. Wilson's Ford pickup truck. Mr. Wilson stopped the truck headed west in the eastbound lane, in position to pull his son's Honda from the ditch. The truck was about ten feet from the hilltop with its headlights burning. The younger Wilson went toward the hill crest with the mission of warning eastbound vehicles. The son saw defendant's vehicle approaching from the west.

Defendant saw the glow of headlights as he approached the hilltop, but thought the source was an approaching vehicle or yard lights. He saw the son leaping out of the way and almost immediately saw the truck's headlights. He claimed to have immediately applied his brakes and steered

to the ditch. Due to slick ice and snow, the braking and swerving did not have the intended effect. Defendant's vehicle collided with the front of the pickup truck. Mr. Wilson was standing to the rear of the truck. The collision caused the truck to move backward striking and injuring Ivan Wilson.

The Wilsons' son testified that after the accident, while he and defendant were assisting Mr. Wilson to a nearby house, he detected the odor of alcohol or beer. The boy stated that neither he nor his father had been drinking. Mr. Wilson, in response to a question whether he had a conversation with defendant, volunteered that defendant "had a very strong odor of alcohol on his breath." During defendant's case, he denied having consumed any alcoholic beverages. He also testified that law enforcement officers arrived within fifteen minutes after the accident. Defendant claimed to have sat in the front seat of a patrol car next to a highway patrolman for at least fifteen minutes. He testified he did not take a field sobriety test or a breathalyzer test. The patrolman was not called as a witness for either party.

Mr. Wilson was seen by several physicians, including John Pazell, M.D., an orthopedic surgeon. Dr. Pazell's deposition was offered by plaintiffs at trial. Dr. Pazell testified he first examined Mr. Wilson on March 24, 1987. At that time Wilson complained of upper spine and neck pain and numbness in the arms. Based on the history given by the patient, x-rays of Mr. Wilson's back and the findings of a physical examination, Dr. Pazell diagnosed Wilson's problems in the upper spine, neck and arms as a cervical spine soft tissue injury. Based upon a hypothetical question, Dr. Pazell opined that the January 6, 1985, accident caused the injury.

On cross-examination Dr. Pazell testified that he had referred Mr. Wilson to other physicians for consulting opinions. Among those was Robert Tenney, M.D., a neurosurgeon. After Dr. Tenney's report was identified and the parties stipulated that the report was a business record of Dr. Pazell, defendant's lawyer asked that Dr.

Pazell read the following excerpt from the report:

> *Impression*: Cervical spondylitic disease at C5–C6, C6–C7 with mild minimal decreased sensory change. Seriously doubt that his current problems are related to accident of January, 1985.

The entire report was offered in evidence by defendant at trial.

■ The first issue is the propriety of defendant's contributory fault instruction. That instruction, designated Instruction No. 10, stated:

> In your verdict on the claim of plaintiff Ivan Wilson, you must assess a percentage of fault to plaintiff Ivan Wilson, whether or not defendant was partly at fault, if you believe:
> FIRST, either;
> a. Plaintiff Ivan Wilson's vehicle was on the wrong side of the road, or
> b. Plaintiff Ivan Wilson stopped his vehicle in a lane reserved for moving traffic, and
> SECOND, Plaintiff Ivan Wilson was thereby negligent, and
> THIRD, Such negligence of Plaintiff Ivan Wilson directly caused or directly contributed to the cause of any damage Plaintiff Ivan Wilson may have sustained.

Plaintiff Ivan Wilson submitted Instruction Number 8, which read:

> In your verdict you must assess a percentage of fault to defendant if you believe:
> First, defendant either:
> failed to keep a careful lookout, or drove at an excessive speed, or knew or by the use of the highest degree of care could have known that there was a reasonable likelihood of collision in time thereafter to have swerved or slackened his speed but defendant failed to do so, and
> Second, defendant's conduct, in any one or more of the respects submitted in paragraph First was negligent, and
> Third, as a direct result of such negligence, plaintiff Ivan Wilson sustained damage.

Two cases bearing a striking similarity to this case have been decided by this Court

since the adoption of comparative fault. Those cases are dispositive of the first issue. In *Lee v. Mirbaha*, 722 S.W.2d 80 (Mo. banc 1986), and *Barnes v. Tools & Machinery Builders, Inc.*, 715 S.W.2d 518 (Mo. banc 1986), the plaintiff's verdict directing instruction required the jury to assess a percentage of fault to the defendant if the jury believed certain factual propositions. *Lee*, 722 S.W.2d at 82; *Barnes*, 715 S.W.2d at 520. There, as here, a contributory comparative negligence instruction was submitted by the defendant requiring the jury to assess a percentage of fault to the plaintiff if it believed a different, although not logically inconsistent, set of factual propositions. *Lee*, 722 S.W.2d at 83; *Barnes*, 715 S.W.2d at 520. The court held that a jury verdict assessing no fault to the defendant negated any claim of prejudice to plaintiff in the giving of an erroneous contributory fault instruction. *Lee*, 722 S.W.2d at 84; *Barnes*, 715 S.W.2d at 522.

As in *Lee* and *Barnes*, we must assume the jury followed the instructions. Instruction No. 8 required some assessment of fault to defendant if the jury found the facts hypothesized to be true. The assessment of fault was not dependent upon and made no reference to Instruction No. 10. The jury necessarily must have concluded that one of the essential propositions was not established when it failed to assess any fault to defendant. Absent some assessment of fault to defendant, there was no prejudice in giving the contributory fault instruction. The first point is denied.

■ The second point asserts that the portion of Dr. Tenney's report stating his doubts that Mr. Wilson's current problems relate to the accident should not have been admitted in evidence. The point relied on claims the comment was irrelevant, conjectural, hearsay, not competent and not based on a proper hypothesis. The objections raised at trial were, "[t]hat's not competent and calls for a conclusion. There's not been a proper hypothetical posed to the doctor...." The only grounds for rejecting the evidence discussed in the argument portion of the brief are that the report was hearsay and that Dr. Tenney's opinion was speculative because it was not based on reasonable medical certainty. These objec-

tions were not articulated at trial. A party is not permitted to advance on appeal an objection different from that presented at trial. *Frank v. Environmental Sanitation Management*, 687 S.W.2d 876, 884 (Mo. banc 1985).

■ In addition, Dr. Tenney's report was being used to cross-examine Dr. Pazell. The extent and scope of cross-examination in a civil case is discretionary with the trial court, and its rulings will not be disturbed on appeal absent a clear showing of abuse of discretion. *Krez v. Mickel*, 431 S.W.2d 213, 215 (Mo.1968). Cross-examination of an expert witness extends to questions testing the witness' skill, credibility, qualifications, and the value and accuracy of his opinions. *Powell v. Norman Lines, Inc.*, 674 S.W.2d 191, 196 (Mo.App.1984). A physician soliciting a consultation report from a colleague is akin to a physician consulting an authoritative medical text. Therefore, the physician seeking the consultation report may be cross-examined regarding inconsistencies in his findings and conclusions and the findings and conclusions of the consultant physician. *Ortner v. Terry*, 533 S.W.2d 640, 643 (Mo.App.1976). Any complaint that the report was hearsay was obviated when plaintiffs' attorney stipulated that the report was part of Dr. Pazell's business records. *Allen v. St. Louis Public Serv. Co.*, 365 Mo. 677, 285 S.W.2d 663, 667 (1956); *Miller v. Engle*, 724 S.W.2d 637, 640 (Mo.App.1986).

■ The third point on appeal complains that defendant was permitted to testify that although he was in close proximity to law enforcement officers shortly after the accident, he was not given a field sobriety test or breathalyzer test. The objection at trial was that plaintiff's testimony was "[n]ot relevant or material." If one party improperly elicits irrelevant evidence constituting part of a transaction to his benefit, he cannot object to a continuation of evidence of the transaction by the opposing party directed at refuting adverse inferences arising from the incomplete nature of the evidence. *Watson v. Landvatter*, 517 S.W.2d 117, 122 (Mo. banc 1974). When plaintiff introduced testimony that defendant's breath had the strong odor of alcohol after the accident, that became an issue

in the case. Evidence is relevant and material if it tends to establish or negate a fact in issue or corroborate relevant evidence. *Curry & Co. v. Hedrick*, 378 S.W.2d 522, 536 (Mo.1964); *Nuckols v. Andrews Investment Co.*, 364 S.W.2d 128, 138 (Mo.App. 1962). The failure of investigating law enforcement officers who were at the scene to request that defendant take a sobriety test following the accident tends to corroborate defendant's claim that he did not consume intoxicants and negate plaintiff's evidence that defendant had alcohol on his breath. The evidence of the absence of sobriety tests may have been objectionable on grounds other than relevancy and materiality, but no other grounds were asserted at trial. The third point is without merit.

The judgment is affirmed.

All concur.