Forest J. PHILMON, Appellant,

v.

Martin BAUM, d/b/a Lincoln Rubber Co., Squaw Creek Truck Plaza, Inc., and Elmhurst Rubber Company, Respondents.

No. WD 46914.

Missouri Court of Appeals, Western District.

Sept. 28, 1993.

Motion for Rehearing and/or Transfer to Supreme Court Denied Nov. 2, 1993.

Application to Transfer Denied Dec. 21, 1993.

772

William H. Pickett, David T. Greis, Kansas City, for appellant.

James L. Baker and Michael Hufft, Merrick, Baker, Fox, Hufft & Strauss, P.C., Kansas City, for respondent Elmhurst Rubber Co., Inc.

Glenn E. Bradford, Kansas City, for respondent Baum.

David E. Larson and Diane M. Beers, Warson, Ess, Marshall & Enggas, Kansas City, for respondent Squaw Creek Truck Plaza, Inc.

Before ULRICH, P.J., and BERREY and SMART, JJ.

ULRICH, Presiding Judge.

Forest J. Philmon appeals the judgment entered, following jury verdict, in favor of defendants Martin Baum d/b/a Lin–Rub Co. Inc. ("Lin–Rub Co.") and Squaw Creek Truck Plaza, Inc. ("Squaw Creek"). Mr. Philmon also appeals the dismissal of defendant Elmhurst Rubber Co., Inc. for lack of personal and subject matter jurisdiction. The judgment is affirmed.

This strict products liability case arose from events occurring on January 26, 1982, when Mr. Philmon, an over-the-road truck driver, while seated in the driver's seat of his truck, attempted to hook a tarp strap [1] over his suitcase on the "doghouse." [2] Mr. Philmon hooked the strap to the right side of the doghouse, then used two hands to stretch the strap to the left side. As he was pulling the strap, it came loose, and a part of it struck him in the left eye. As a result, Mr. Philmon lost the vision in his left eye. Mr. Philmon claimed to have purchased that tarp strap in 1980 or 1981 from Defendant Squaw Creek. The strap was imprinted with the words "Lincoln Rubber Company." [3]

Forest Philmon alleges several points on appeal. He contends that the trial court erred by: (1) not granting a new trial because one or more of defendants' peremptory strikes were racially based; (2) permitting defendants to make reference to manufacturers which were not parties to the suit; (3) permitting references implying that Mr. Philmon was contributorily negligent where defendants did not plead contributory negligence as an affirmative defense and were denied leave to amend their pleadings to include it; (4) limiting each party to two opportunities to question each witness; (5) failing to grant mistrial motions for comments defendants made during voir dire and opening statements regarding plaintiff's negligence and manufacturers; (6) dismissing the alleged manufacturer for lack of personal and subject matter jurisdiction; and (7) that the cumulative effect of all the above-mentioned occurrences were so prejudicial as to merit a new trial on all issues.

The judgment of the trial court is affirmed.

## I.

Appellant Forest Philmon contends for his first point on appeal that the trial court erred in refusing a new trial because the defense exercised peremptory strikes that were allegedly racially motivated. Mr. Philmon did not

---

1. The "tarp strap," or "tie-down strap" as it is also known, is a rubber strap with two metal "S" hooks, one attached at each end.

2. The "doghouse" is next to the driver's seat in the truck cab and covers part of the engine compartment.

3. Lin–Rub Co., Inc. is also known as Lincoln Rubber Company.

raise a *Batson*[4] challenge at *voir dire* or during the course of the trial. On the morning after the jury was impaneled, Mr. Philmon's counsel was informed that certain comments attributed to counsel for Defendants Martin Baum and Lin–Rub Co. demonstrate that at least one of his peremptory strikes was exercised for racially impermissible reasons.[5] Mr. Philmon, however, did not raise this issue with the court. He instead allowed the trial to proceed for two weeks and only after the verdict was not in his favor did he allege racially discriminatory use of peremptory challenges. Mr. Philmon presents two arguments as to why he has not waived his right to make a *Batson* challenge.

■ Mr. Philmon's first argument is that because *Edmonson v. Leesville Concrete Company, Inc.*, 500 U.S. 614, 111 S.Ct. 2077, 114 L.Ed.2d 660 (1991), was handed down the same day that the verdict in this case was rendered, counsel believed that the trial court was bound by this court's decision in *McDaniel v. Mutchnick*, 1990 WL 165952 (W.D.Mo.1990) (*transferred* June 11, 1991). *Batson* found that the prosecuting attorney in the criminal case against a racial minority defendant represented the state and that the Fourteenth Amendment proscribed the prosecutor from exercising racially discriminatory peremptory strikes to prevent venirepersons who were members of the same racial minority as the defendant from serving on the jury. This court decided in *Mutchnick*, over strong dissent, that *Batson* was inapplicable to civil cases since private parties in a civil suit were not state actors for purposes of the Fourteenth Amendment. The Court in *Edmonson* found sufficient state nexus in civil cases and held that racially discriminatory peremptory strikes in civil cases were constitutionally impermissible. Mr. Philmon argues that *Mutchnick* was "the law" in the Western District of Missouri until *Edmonson* "became generally known," and that in this case "it would have been difficult, if not impossible, for [Appellant] to in good faith

either challenge the peremptory strikes at the time they were made, or to attempt to have a mistrial declared upon learning [of the alleged comments]."

Mr. Philmon relies on Missouri Rule of Civil Procedure 55.03 for this "good faith" reason not to challenge the peremptory challenges. Rule 55.03 states that pleadings and motions are to be signed by counsel and the signature certifies that . . . it is well grounded in fact and is warranted by existing law or a *good faith argument for the extension, modification, or reversal of existing law;* . . . Rule 55.03 (*emphasis added*).

*Mutchnick* was not a unanimous decision. Judge Shangler, in dissent, stated that the very same issue which this court addressed was then pending before the United States Supreme Court. Judge Wasserstrom's dissent listed many decisions throughout the United States that had applied *Batson* to civil cases.

■ A motion to transfer *Mutchnick* to the Supreme Court of Missouri was timely filed before this court's mandate was entered. While transfer to the Supreme Court is pending, the mandate of the court of appeals is not entered. If transfer is accepted, the Supreme Court may determine the case the same as on original appeal. Rule 83.09; *Buchweiser v. Estate of Laberer*, 695 S.W.2d 125, 127 (Mo. banc 1985). The decision of the court of appeals in a case subsequently transferred is of no precedential effect. *Carroll v. Loy–Lange Box Co.*, 829 S.W.2d 86, 90 (Mo.App.1992). If transfer is denied, the intermediate appellate court's mandate is then entered and the decision becomes final. During the time transfer is pending, and until transfer is denied and the mandate subsequently entered, a decision by this court is not final. At the time of the Philmon trial, the final mandate in *Mutchnick* had not been entered by this court since transfer to the Missouri Supreme Court was pending.[6]

---

**4.** *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986).

**5.** Respondents claim that racially neutral reasons existed for each of the peremptory strikes and

that these reasons could have been explained had a timely challenge been made.

**6.** The case was transferred on June 11, 1991.

The *Mutchnick* decision, therefore, was not final.

A good faith argument existed at trial that racially discriminatory peremptory challenges were unconstitutional. Since a good faith argument was evident, Mr. Philmon was not precluded from raising the issue at jury selection or when his counsel became aware of alleged racial-based peremptory challenges.

■■ The question of when a party must bring a *Batson* challenge has been answered by the Missouri Supreme Court. In *State v. Parker*, 836 S.W.2d 930 (Mo. banc 1992), the Court held that a *Batson* challenge, to be timely raised, must be raised before the venire is excused. *Id.* at 937. A trial court can correct an improper peremptory strike if the venire has not yet been excused. *Id.* at 936. Opposing counsel, with the memory of the stricken venirepersons and the reasons for striking them still fresh in his mind, can recall and elucidate the reasons for his peremptory challenges. Waiting until after the trial to raise a *Batson* challenge is prejudicial to the opposing side and does not provide an opportunity for the improperly stricken venireperson to serve. *See Dias v. Sky Chefs*, 948 F.2d 532, 535 (9th Cir.1991). Appellant did not contest peremptory challenges until after the verdict. A *Batson* challenge is waived unless timely raised. *State v. Cortez–Figueroa*, 855 S.W.2d 431, 437 (Mo.App. 1993). Mr. Philmon waived his right to raise a *Batson* challenge by not raising it timely and thus did not preserve it for appeal.

■■ Mr. Philmon's second argument on this point is that the trial court committed plain error by not raising a *Batson* challenge *sua sponte*. Mr. Philmon presented no authority for the proposition that the trial court must raise a constitutional issue if the litigants fail to do so. A trial judge is not required to raise potential constitutional issues if the litigants do not raise them. This is especially so when no clear constitutional issues are present. The court was not aware of any racially impermissible motives. This argument is without merit.

Mr. Philmon requests that this issue be considered as plain error. Rule 84.13(c) of the Missouri Rules of Civil Procedure provides:

Plain errors affecting substantial rights may be considered on appeal, in the discretion of the court, though not raised or preserved, when the court finds that manifest injustice or miscarriage of justice has resulted therefrom.

Mr. Philmon cites a case from the Eastern District that states if a motion for mistrial was made without mentioning the constitutional grounds, the Court of Appeals could still consider the potential violation of constitutional rights as plain error on appeal. *State v. Williams*, 730 S.W.2d 299, 301 (Mo. App.1987). The distinguishing difference is that in *Williams*, which was a criminal case, a challenge was made at trial, albeit cursory, but the challenge was not mentioned in the motion for a new trial. *Id.* at 300. In this case no challenge was made until after the verdict was handed down.

Neither manifest injustice nor miscarriage of justice resulted from the peremptory challenges in this case. A party cannot "sandbag" a constitutional claim, gamble on a jury result, and, then if the verdict is adverse, claim plain error. *Associated Underwriters, Inc. v. Mercantile Trust Co. Nat'l Ass'n*, 576 S.W.2d 343, 346 (Mo.App.1978); *see also Sherpy v. Bilyeu*, 608 S.W.2d 521, 523 (Mo. App.1980) (plain error is not a doctrine available to revive issues already abandoned by selection of trial strategy or by oversight). Mr. Philmon's point one is denied.[7]

## II.

■■ Mr. Philmon asserts as his second point on appeal that the trial court erred by allowing respondents to interject references to "manufacturers" where the alleged manufacturer of the tarp strap in this case (Elmhurst Rubber Company) had been dismissed for lack of subject matter and personal jurisdiction, and the court had sustained a Motion in Limine to prevent the mention of the manufacturer before the jury. Specifically, Mr. Philmon complains of comments that made reference to "manufacturers." Mr.

---

7. The question of retroactive application of *Ed-* *monson* need not be reached.

Philmon contends that these references confused and misled the jury and prejudicially shifted the focus of liability to absent manufacturers.

No specific mention was made of the dismissed party, either by name or by reference to "the manufacturer of the injury-causing strap." These references to manufacturers, often coupled with the words "or sellers," came in general statements. For example in part of his opening statement the attorney for respondents Squaw Creek, stated:

> [Squaw Creek's Attorney]: As a matter of fact, you're going to hear testimony in this case from people who are knowledgeable in this field that the only reason a manufacturer would consider—or the seller or someone along the chain—to put a warning on—

[At this point counsel for Mr. Philmon requested to approach the bench.]

Another example of which Mr. Philmon complains was this statement during *voir dire* made by Squaw Creek's attorney:

> What I want to know is to identify the preconceived notions that any of you may have about warnings and their place in society, is there anyone who contrary to what they may hear from the evidence who believes that it is incumbent upon the manufacturer or distributor or seller of the product to warn about whether or not these conditions—

[At this point an objection was made.]

In reference to a witness's statement that the hook from the tarp strap was made of the same metal as all of the other hooks he had looked at on straps made by various manufacturers, Respondent's counsel asked: "So every manufacturer in the country may be making defective hooks." Mr. Philmon's objection was sustained and the jury was instructed to disregard the question.

An additional reference to manufacturers was in a reading of a deposition by *Mr. Philmon's counsel.* No objection was made.

Mr. Philmon's counsel, in his opening statement, stated: "Now I'd like to show what counsel has agreed on as a similar, for purposes of discussion, tarp strap. This is Number 31, and it is very similar to the one which was in fact *manufactured and sold* by Mr. Baum's company." (emphasis added).

 The references to manufacturers were generic in nature and did not mislead or confuse the jury. Both sides made generic references to manufacturers. The references did not prejudicially shift the focus of the trial to the possible liability of a non-party. As a general rule, a party cannot complain on appeal of an alleged error in which he joined. *Hilton v. Crouch*, 627 S.W.2d 99 (Mo.App.1982). A trial court has substantial discretion in controlling and ruling on the submission of evidence. *Gant v. Hanks*, 614 S.W.2d 740, 744 (Mo.App.1981). Allowing these references to manufacturers in evidence was not error and even if the references were irrelevant, they would not rise to the level of being so inflammatory or prejudicial as to amount to an abuse of the trial court's discretion. *Vasseghi v. McNutt*, 811 S.W.2d 453, 456 (Mo.App.1991).

Appellant's second point is denied.

### III.

 Mr. Philmon contends as point three that the trial court erred in allowing repeated references to Mr. Philmon's alleged contributory negligence. This case was based on an event occurring in 1982 for which contributory negligence would have been an affirmative defense.[8] *McGowne v. Challenge–Cook Bros., Inc.*, 672 F.2d 652, 663 (8th Cir.1982) (applying Missouri law). Contributory negligence was not pleaded and defendants were denied leave to amend their pleadings to include it.[9] Because contributory negligence was not within the scope of the

---

**8.** Strict liability actions are now governed by statute. § 537.760, RSMo (Supp.1989).

**9.** Rule 55.33(a) states in part, "... Otherwise, a party may amend his pleading only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so

requires...." Whether the court should have allowed defendants to amend is not an issue on appeal. The trial court exercised its discretion to disallow amendment of the pleadings to include the affirmative defense of contributory fault.

pleadings, Mr. Philmon objected to statements by the defendants that tended to inject Mr. Philmon's fault or negligence into the case.

A plaintiff carries the burden of proof on each element of the strict products liability claim, and defendants can properly present evidence or argument relating to any of the elements that a plaintiff must prove. Plaintiff's knowledge is material for two parts of the second element [10] in a strict liability case where the defect was a lack of warning. "Second, the [product] was then unreasonably dangerous when put to a reasonably anticipated use *without knowledge of its characteristics.*" M.A.I. 25.05 (1978 New) (Emphasis added). The instruction makes knowledge of the product's characteristic material. The issue of whether a warning was needed raises the obvious question of whether the dangerous condition or dangerous propensity of the product was open and obvious. *See McGowne,* supra at 664.

■ Deciding whether a product is "unreasonably dangerous" involves an objective and subjective determination by the jury in each case and "[a]lthough not conclusive, '[t]he obviousness of a defect or danger is material to the issue whether a product is 'unreasonably dangerous.'"" *Linegar v. Armour of America, Inc.* 909 F.2d 1150, 1154 (8th Cir.1990) (quoting *McGowne,* 672 F.2d at 663).

Therefore, even though the defendants could not argue contributory negligence and were not allowed instructions on contributory negligence, their inquiries into the degree of Mr. Philmon's knowledge regarding the potential danger involved with the use of tarp straps and his knowledge of the characteristics of the tarp strap, as well as the inquiries of whether the potential danger would be obvious to a reasonable person, were material to the elements Mr. Philmon needed to prove to satisfy his burden. The trial court did not commit error by allowing the defense

to inquire. The level of the inquiries did not exceed the scope of the elements required by M.A.I. 25.05.

Mr. Philmon's third point is denied.

### IV.

■ Mr. Philmon's fourth point on appeal asserts that the trial court abused its discretionary control over the nature and extent of direct, cross and redirect examination by limiting each party to two opportunities to question each witness. Mr. Philmon claims that the rule itself, explained by the trial judge at pre-trial conference without objection, was an improper exercise of judicial power. Mr. Philmon also contends that as applied, this rule denied him the opportunity to redirect on two occasions after re-cross by the defense.

■ The trial court, of necessity, has long exercised discretion over the scope and extent of cross-examination in a civil proceeding, and the trial court's ruling will not be disturbed on appeal unless an abuse of discretion is clearly shown. *Krez v. Mickel,* 431 S.W.2d 213, 214 (Mo.1968).

In this case, during pre-trial conference, the trial court explained that each party would be permitted only two opportunities to question each witness. The court explained that no deviations from this rule would be permitted. The parties were in apparent agreement, and no objection to the rule was entered until trial was underway and the rule was invoked against Mr. Philmon's counsel. The parties were reminded of this rule several times during trial.

The trial court enforced its rule limiting counsel to two opportunities to question a witness on several occasions. The first occasion Mr. Philmon's counsel questioned a witness on direct, and the witness was cross examined by the respective attorneys for the defendants. Mr. Philmon's attorney then questioned on redirect, and counsel for one of the defendants asked some follow-up ques-

---

10. M.A.I. 25.05 (1978 New) states the five elements of one part of plaintiff's case: First, defendant sold the [product] in the course of defendant's business, and Second, the [product] was then unreasonably dangerous when put to a reasonably anticipated use *without knowledge of its*

*characteristics,* and Third, defendant did not give an adequate warning of the danger, and Fourth, the product was used in a manner reasonably anticipated, and Fifth, plaintiff was damaged as a direct result of the [product] being sold without an adequate warning. (Emphasis added).

tions. Mr. Philmon's counsel approached the bench, and the following dialogue took place:

> [PLAINTIFF'S ATTORNEY]: Do I understand that I was not capable because of your rule of asking him another question? Is that right?
>
> THE COURT: There was no objection during the redirect or recross as to going beyond the scope. I've decided that I think you each should have two chances.
>
> [PLAINTIFF'S ATTORNEY]: Okay. This is the first time it came up, and I just want to make sure I understand.
>
> THE COURT: Didn't we have an understanding on that?
>
> [PLAINTIFF'S ATTORNEY]: No. It's the first time it's ever happened. That is what my question is. And I just want to make sure we're clear with specificity. I ask once, and then I ask twice, and that's it?
>
> THE COURT: That's it.
>
> [PLAINTIFF'S ATTORNEY]: Okay. That's fine.

Sometime later in the trial, Mr. Philmon's attorney questioned another witness on direct. The witness was cross-examined by one attorney for the defense and then questioned on redirect by Mr. Philmon's attorney. The witness was questioned again on recross by the defense attorney. Mr. Philmon's attorney then attempted to ask a "couple of more questions." The court refused to allow the additional questions and the following dialogue occurred:

> THE COURT: I'm sorry. No. [the witness], thank you. You may leave.
>
> We agreed at the beginning that everybody would get two opportunities to question. That's all you get....

The parties approached the bench, and when Mr. Philmon's attorney stated that the recross had brought up something new, the court responded, "You should have objected." The court explained the rule again and said that any new material on recross would be excluded with the proper motion. The court again stated that no deviation from the rule would be permitted. Counsel for Mr. Philmon again stated that he understood.

The next conflict with the trial court's "two opportunities rule," occurred later when, after direct by Mr. Philmon's counsel, the attorney for one of the defendants said he did not have any questions. The other defendant's attorney then asked questions on cross. Mr. Philmon's attorney redirected, and then the attorney who had previously passed asked a few questions. When Mr. Philmon's counsel, who did not object, attempted to ask additional questions, the court stopped him pursuant to the rule. The court stated that counsel could have objected if any of the questions inquired into new areas, but all the parties knew there would be no further redirect. Mr. Philmon's counsel objected unsuccessfully.

All the parties understood and agreed to the rule before trial commenced, and all parties understood that the rule was to be applied to all counsel without exception. Mr. Philmon's counsel said that he understood the rule and that if counsel attempted to introduce new material subsequent to his redirect that the material would be excluded upon proper objection.

The trial court did not abuse its discretion in applying its "two opportunities rule." The trial court administered the rule equally, and the parties were aware that they could object to questions during redirect or recross which solicited testimony about evidence not presented during direct or the first opportunity to cross examine the witness.

 Even had the trial court abused its discretion by limiting counsel in applying its "two opportunities rule," Mr. Philmon was not prejudiced. The verdict was for the defense. Both witnesses involved were testifying to damages only. Therefore, Mr. Philmon could not have suffered any prejudice by not being permitted additional redirect. *See Wilson v. Shanks*, 785 S.W.2d 282, 285 (Mo. banc. 1990) (Absent some assessment of fault to defendant, there was no prejudice in giving an erroneous contributory fault instruction).

Mr. Philmon's fourth point is denied.

### V.

Mr. Philmon's fifth point on appeal asserts that the trial court refused to grant mistrials when manufacturers were mentioned and when the "negligence" of Mr. Philmon was implied.

A mistrial is the most drastic remedy for trial error and "should be granted only where the incident is so grievous that the prejudicial effect can be removed no other way." *Herndon v. Albert,* 713 S.W.2d 46, 48 (Mo.App.1986). For reasons already discussed, the incidents complained of were not errors and plaintiff was not prejudicially harmed. The trial court did not err in denying Mr. Philmon's motions for mistrial.

Mr. Philmon's fifth point is denied.

### VI.

Mr. Philmon claims as his sixth point on appeal that the trial court erred in dismissing defendant Elmhurst Rubber Company, Inc. ("Elmhurst") because of lack of subject matter and personal jurisdiction.

Elmhurst was dismissed and service was quashed after the trial court allowed extensive discovery and ordered independent testing of straps containing rubber mixed for Lin–Rub Co. by Elmhurst. The tests indicated that the rubber in the strap that injured Mr. Philmon was not made with the same ingredients as were the Elmhurst straps. The trial court concluded that because Mr. Philmon failed to provide any evidence that Elmhurst made the strap that injured Mr. Philmon, Elmhurst could not have committed a tort in Missouri within the meaning of the Missouri Long–Arm Statute, section 506.500, *et seq.* RSMo (1986), or have had sufficient Constitutional "minimum contacts" to be subject to personal jurisdiction in Missouri. *International Shoe v. Washington,* 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945). Mr. Philmon did not present sufficient evidence to show that a genuine issue of fact existed on the issue of jurisdiction. Mr. Philmon failed to carry his burden of proof on the issue, and the trial court properly quashed service and dismissed Elmhurst from the case.

Mr. Philmon's sixth point is denied.

### VII.

For his final point on appeal, Mr. Philmon contends that the cumulative effect of the "errors" complained of in points I through VI warrant reversal and remand for a new trial. For the reasons discussed above, no reversible errors occurred and, therefore, there was no cumulative prejudicial effect. Point seven is denied.

The judgment is affirmed.

All concur.