STATE of Missouri,
Plaintiff-Respondent,

v.

Lawrence Gene TIMMONS,
Defendant-Appellant.

No. 11021.

Missouri Court of Appeals,
Southern District,
Division One.

June 28, 1979.

John D. Ashcroft, Atty. Gen., Paul Robert Otto, Asst. Atty. Gen., Jefferson City, for plaintiff-respondent.

David R. Fielder, Springfield, for defendant-appellant.

GREENE, Judge.

On December 15, 1977, after trial by jury in the Circuit Court of Greene County, defendant Lawrence Gene Timmons was found guilty of the crime of robbery in the first degree and was thereafter sentenced by the trial court to imprisonment in the custody of the Missouri Department of Corrections for a term of five years. Defendant appeals the judgment and sentence of the trial court.

The facts of this case, as testified to at time of trial, are as follows. On March 2, 1976, Allyson Wright, a college student, was in her apartment at 620 East Madison, Springfield, Missouri. A man came to the door and inquired as to the whereabouts of a girl by the name of Barbara Heinrich who lived upstairs. Ms. Wright told him that Barbara was at work and would not be home until later. The man left, but later returned, again asking for Barbara. She told him that Barbara was not home. He followed her into her apartment, hit her in the face several times, took her wallet, which contained money, credit cards and other identification, and left. The police were called. They questioned her and obtained a description of her assailant.

Nothing else of interest happened until March of 1977. During that month, Suzy Crouch, who lived at 917 East Normal, Springfield, Missouri, found Ms. Wright's wallet in the basement of her house while she was searching for a hampster that had escaped. The wallet contained the student identification card of Ms. Wright. Suzy contacted Allyson and told her that she had found the wallet. Ms. Wright did not come after it, but called the police and informed them of the incident. In June of 1977, detectives from the Springfield Police Department picked up the wallet and its contents. Ron Worsham, one of the detectives, then gave four pictures, or "mug shots", to Detective Carl Malin. Worsham had personally selected the pictures from a mug shot file at the police department as pictures of individuals who, in his opinion, approximated the description of the robber given them by the victim. These pictures were introduced into evidence as state's exhibits 1 through 4, with one picture (state's exhibit 2) being of defendant. Ms. Wright, in the presence of Malin, identified exhibit 2 as a picture of her assailant. Malin gave the pictures back to Worsham. Worsham placed the four pictures on his desk. When Ms. Wright came in the following Monday to identify her property, she again picked exhibit 2 as a picture of her assailant and told Worsham that this was the man who had robbed her. This out-of-court identification occurred approximately 15 months after the date of the robbery.

Ms. Wright could not identify the defendant in open court as the person who had robbed her. She was asked if she recognized state's exhibits 1 through 4. Defendant objected, which objection was,

"I am going to again object to any identification of the picture of the defendant at this time, based on her previous inability to identify the defendant in open court. It is defendant's contention that this is a back-hand method of identification that in effect—the practical effect of it is her inability to point out the defendant is making his photograph identification more or less bolstering her testimony on the stand and her inability to testify."

This objection was overruled by the trial court. The court had previously overruled defendant's motion to suppress evidence, which motion was based on the alleged impermissible suggestive photographic display by the Springfield Police Department. Ms. Wright then identified the exhibits as photographs that had been shown to her earlier by the police and identified exhibit 2 as a picture of the robber, as he looked on March 2, 1976.

A state's witness, Charles Ball, had lived at the 917 East Normal address at the time of the robbery. He testified that defendant, in approximately April of 1976, had come to live at the house and had lived in the basement where the wallet was found. He identified state's exhibit 2 as a picture of defendant, as he looked in April of 1976. He stated that defendant's appearance had changed at time of trial, in that his hair was darker and longer and he now had a mustache. The testimony of defense witness John Gage was similar to that given by witness Ball. Detective Brazeal, of the Springfield Police Department, also testified that exhibit 2 was a picture of defendant as he looked in May of 1976.

At the close of all of the evidence, defendant moved for a directed verdict of acquittal on the grounds that the evidence presented by the state was insufficient to sustain a conviction. The motion was overruled. In his motion for new trial, defendant charged, in addition to other alleged, but abandoned, errors, that,

'1. The court erred in overruling the Defendant's Amended Motion to Suppress any photographic identification of Lawrence Gene Timmons by Allison (sic) Wright for the reason that the four photograph (sic) displayed by the Springfield Police Department in its photographic lineup were so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification of the Defendant's photograph and misidentification of the Defendant himself.'

'3. The court erred in overruling the Defendant's objection to identification of

a photograph of the Defendant by Allison (sic) Wright for the reason that said identification of the Defendant's photograph by Allison (sic) Wright bolstered her inability to identify the Defendant in open Court, and thus was inadmissable (sic).'

'4. The Court erred in overruling Defendant's Motion For a Directed Verdict at the close of the State's case for the reason that the State did not make a submissible case in that the Defendant was inadequately identified by the State's witnesses as the person who committed the alleged crime.'

'5. The Court erred in overruling Defendant's Motion For a Directed Verdict at the close of all evidence for the reason that there was no additional evidence offered after the close of the State's case which would make the State's case submissible and there was no additional evidence offered identifying Defendant as the person who committed the alleged crime.'

Defendant raises three points on appeal. He claims that the trial court erred 1) in overruling defendant's motion to suppress photographic evidence of identification of defendant by Allyson Wright for the reason that the photographic display of "mug shots" was so impermissibly suggestive as to give rise to a substantial likelihood of irreparable misidentification; 2) by permitting testimony by the victim and other witnesses as to the victim's extrajudicial photographic identification of the defendant; and, 3) in overruling defendant's motion for directed verdict of acquittal because there was no in-court identification of defendant as the perpetrator of the crime.

■ The primary requirement in the trial of a man charged with a crime is that he must be shown to be the person who committed the offense. *State v. Brown,* 542 S.W.2d 789, 791 (Mo.App.1976). The issue of identification of the perpetrator of a crime is for the jury, and appellate courts do not delve into a determination of the weight of the evidence in such cases. *State v. Maxwell,* 502 S.W.2d 382, 390 (Mo.App.

1973). However, we do have an obligation to determine if the identification evidence submitted to the jury was admissible and, if not, whether such admission was prejudicial error. We, therefore, discuss the three assignments of error.

### MOTION TO SUPPRESS

■ On this assignment of error, defendant contends that the Springfield Police used impermissibly suggestive procedures in selecting the photographic display from which the victim identified defendant's photograph as a picture of her attacker. Defendant has not preserved this point for review, since, although he raised the issue in his motion to suppress testimony, which was overruled, he did not timely object to such testimony on that ground at time of trial. His objection, at time of trial, was that the testimony should not be allowed because the victim could not identify defendant in open court at time of trial, which objection was properly overruled. Having let his assignment of error expire, he may not raise it now. *State v. Johnson,* 536 S.W.2d 851, 854 (Mo.App.1976).

■ We have not been asked to review this assignment under the doctrine of plain error, Rule 27.20(c)[1], but, if we had been asked to do so, it is obvious, from reading the transcript, that neither manifest injustice nor miscarriage of justice resulted from the trial court's ruling that the photographs were admissible. There is nothing in the record to indicate, in any way, that Detective Malin, or anyone else, followed suggestive procedures in the selection of the four photographs in question, or in showing them to the victim. All of the photographs were of the same size and were of white males answering the description she gave to the police. No suggestions were made by any of the officers and none of the photographs were emphasized. We rule against the defendant on this assignment of error.

### EXTRAJUDICIAL TESTIMONY

■ On this point, defendant contends that the trial court committed error in al-

---

1. Unless otherwise indicated, all references to rules are to Missouri Rules of Court, V.A.M.R.

lowing the victim and Detective Worsham to testify as to extrajudicial identification of the defendant by the victim. No objection was made to the testimony of the victim regarding the extrajudicial identification of exhibit 2, other than a claim that it was inadmissible because she could not identify defendant in open court. At the time of trial, Detective Worsham was asked the following questions and gave the quoted answers thereto.

"Q. Would you describe what, if anything, occurred with regard to Miss Wright and to those pictures, State's Exhibits 1 through 4?

A. Okay, Det. Malin give me the pictures back and had placed Mr. Timmons' picture on top and said this was the person she had picked out. I had them laying on my desk and when she walked into the police station and approached my desk she saw these pictures laying on my desk and again said that was the person.

Q. Now, with regard to any of those exhibits, would you turn them over and tell me if there are any distinguishing characteristics that you observed being made?

A. On the back of the picture of Mr. Timmons she wrote her initials and the date, 6–22–77."

No objection was made to such testimony at time of trial, and no claim of error regarding it was made in the motion for new trial. Also, defendant failed to comply with Rule 84.04(d) as he does not state in his brief "wherein and why" the trial court erred in allowing the challenged testimony. This assignment preserves nothing unless we review for plain error. *Long v. Lincoln*, 528 S.W.2d 512, 513 (Mo.App.1975); *State v. Gant*, 490 S.W.2d 46, 49 (Mo.1973); *State v. Simmons*, 500 S.W.2d 325, 328, 329 (Mo.App. 1973). We hold that the admission of such testimony by the trial court was not prejudicial error, as no manifest injustice or miscarriage of justice occurred by reason of such testimony.

■ It was not error for the court to permit the testimony of the victim as to the extrajudicial identification of exhibit 2 as a picture of the man who robbed her. The identification of the photograph occurred much closer to the date of the crime than the trial itself. Since such was done under nonsuggestive circumstances, the jury could consider it more reliable than an in-court identification at time of trial. A failure to identify at time of trial may be explained by many circumstances, such as a drastic change in hair coloring, the presence or absence of facial hair, and an increase or decrease in the weight of the suspect, as is the case here. The inability of the victim to make an in-court identification of defendant at time of trial merely went to the weight of her testimony and not to its admissibility. *State v. Adail*, 555 S.W.2d 672, 674 (Mo.App.1977).

■ As to the testimony of Detective Worsham regarding the extrajudicial identification of defendant by the victim such matters are not ordinarily reviewable when improperly preserved, *State v. Johnson*, supra, at 856, and any such claimed error is certainly not preserved here. We decline to review this assignment under the plain error doctrine, as a careful reading of the transcript does not indicate any manifest injustice or miscarriage of justice to defendant by reason of the admission of the hearsay testimony of Detective Worsham. We are fully aware of the holding in *State v. DeGraffenreid*, 477 S.W.2d 57 (Mo.banc 1972). However, in *DeGraffenreid*, the hearsay statement was objected to at time of trial and preserved in the motion for new trial, which is not the case here. *DeGraffenreid* was not a plain error case. We rule this assignment of error against the defendant. See *State v. Gant*, supra, at 49.

## JUDGMENT OF ACQUITTAL

■ Here, defendant urges that his motion for judgment of acquittal should have been sustained because the victim could not make a positive in-court identification of him at time of trial. This contention goes to the weight of the identification testimony and is not a subject for appellate review. *State v. Maxwell*, 502 S.W.2d 382, 390–391 (Mo.App.1973). The issue of iden-

tity was one for the jury, which had a duty to compare and weigh all of the evidence regarding identity to determine if defendant was the perpetrator of the crime. *State v. Blackmore*, 327 Mo. 708, 716, 38 S.W.2d 32, 35 (1931). They did so in this case, and by their guilty verdict, satisfied themselves on that issue. After a careful review of the transcript, we see no reason to disturb their verdict.

The judgment is affirmed.

FLANIGAN, C. J., and TITUS, J., concur.