**STATE of Missouri, Respondent,**

v.

**Marcus MERRILL, Appellant.**

**No. WD 54415.**

Missouri Court of Appeals,
Western District.

March 23, 1999.

Motion for Rehearing and/or Transfer to Supreme Court Denied April 27, 1999.

Rosalynn Koch, Asst. Public Defender, Columbia, for appellant.

Philip M. Koppe, Atty. Gen., Kansas City, for respondent.

Before JAMES M. SMART, Jr., Presiding Judge, JOSEPH M. ELLIS, Judge and VICTOR C. HOWARD, Judge.

ELLIS, Judge.

Marcus Merrill appeals his March 24, 1997 conviction of two counts of first degree murder, § 565.020.2 and two counts of armed criminal action, § 571.015.1.[1] On May 9, 1997, Merrill was sentenced as a prior offender and a persistent offender pursuant to § 558.016 to consecutive terms of life imprisonment without the possibility of probation or parole for the two counts of murder and consecutive life sentences for the two counts of armed criminal action.

On February 6, 1996, four year old Kayla Bryant was eating her lunch and watching television in her living room. Kayla noticed two men in a white car in front of her home and alerted her father, George. George opened his garage door and let the two men inside his house. The first man, later identified by Kayla as "a skinny guy," wore a black leather jacket, black hat and pants, rings, a watch and a chain necklace. The second man, later identified by Kayla as the "fat man," was bald and wore a black leather coat, black pants, an earring, a watch, and a chain necklace. The men went into the kitchen for a conversation with George.

Kayla testified that she heard a shot fired in the kitchen. She looked around

---

1. All statutory references are to RSMo 1994 unless otherwise noted.

the corner into the kitchen, and saw the two men holding guns. Her father was lying on the ground. Shortly thereafter, Oscar Bridges, who was helping George remodel the kitchen, ran down the stairs into the basement. One of the assailants followed Bridges down the stairs and shot him. Meanwhile, Kayla returned to a bean bag in the living room. The "fat man" entered the living room and told Kayla, "It's okay." The assailants proceeded to look through George's pockets and the kitchen cabinets.

Kayla waited until she saw the assailants leave before she called the police. Arriving at the scene, the police found Bryant lying in the snow in the front yard. Bridges was found lying in a pool of blood in the basement, with his mouth, hands, and ankles taped with duct tape. Kayla, upset and crying, was in the garage talking with the dispatcher. When interviewed by Detective Pruetting, Kayla initially stated, "Daddy's brother shot Daddy." When she was asked who her Daddy's brother was, Kayla shrugged her shoulders. Kayla then described two African American males, one "fat" and one "skinny" who shot her father. Kayla explained that the two men had been at her home the day before with her Uncle Sonny (Jessie McDonald).

George Washington, a neighbor, heard four gunshots and looked out his door toward the Bryant's house. Washington saw two African American men wearing black leather coats and black caps running toward a light colored four-door car. About fifteen seconds later, he witnessed a third man come running out of Bryant's house. Another neighbor, Shannon Harris offered testimony that corroborated much of Washington's testimony. The differences in their testimony were that Harris heard five gunshots and that Harris observed the three men casually walking to the car.

Another neighbor, Richard Harris was walking home from a neighbor's house when he saw the Bryant's garage door open. Bryant, wearing a blood soaked sweater, ran outside toward Harris, bumping his head on the rising garage door and yelled, "Somebody help." An assailant with braided hair wearing a white, green, and blue striped shirt ran out of the garage carrying a black garbage bag. He dropped the bag and grabbed Bryant in the middle of his yard and dragged him back behind a car in the driveway. The assailant said, "You're not going nowhere, Motherf——r." A second assailant came out of the garage, stood over George and shot him two times with a .45 caliber gold revolver. Harris referred to the second assailant as the "Terminator" because of the manner in which he killed Bryant.

Harris identified Ricky Kidd as "the Terminator" in a photo lineup and a videotaped lineup. Harris also identified Kidd in court, claiming he was "2,001% sure" that he was the man that killed Bryant. Kayla also identified Kidd in a videotaped lineup, telling her mother, "That's him." As she moved closer to the video monitor, Kayla appeared frightened. She clutched the sweater she was holding and grabbed and squeezed Officer Thompson's arm. Kayla identified Merrill in a photo spread, saying, "He killed my daddy. I remember his face." She insisted on showing the picture to her mother and repeated, "He killed my daddy." But at trial, Kayla identified the photo of Merrill as the man who killed Bridges. She claimed the man in the photo only killed Bridges.

Merrill raises four points in his appeal. First, he asserts that the trial court erred by allowing the police officers to testify as to Kayla's statements to them. Second, he argues that there was insufficient evidence to support a conviction. Third, Merrill claims that the trial court erred in finding him to be a prior and persistent offender. And, finally, Merrill argues that the trial court erred in denying his motion for a separate trial.

■ In his first point, Merrill contends the trial court should have suppressed the

testimony of Detectives Guffey and Pruetting recounting Kayla's statements to the police. The state argues that Kayla's statements were admissible pursuant to § 491.075.

Section 491.075 provides:

A statement made by a child under the age of twelve relating to an offense under chapter 565, 566 or 568, RSMo, performed with or on a child by another, not otherwise admissible by statute or court rule, is admissible in evidence in criminal proceedings in the courts of this state as substantive evidence to prove the truth of the matter asserted if:

(1) The court finds, in a hearing conducted outside the presence of the jury that the time, content and circumstances of the statement provide sufficient indicia of reliability; and

(2)(a) The child testifies at the proceedings; or

(b) The child is unavailable as a witness; or

(c) The child is otherwise physically available as a witness but the court finds that the significant emotional or psychological trauma which would result from testifying in the personal presence of the defendant makes the child unavailable as a witness at the time of the criminal proceeding.

In the companion case of *State v. Kidd*, 990 S.W.2d 175 (Mo.App. W.D.1999), the state conceded on appeal that because the "charges against Mr. Kidd ... were not performed with or on a child by another, § 491.075.1 is not a basis for admission of Kayla's out-of-court statements." *Id.* at 178 – 79, n. 2. Moreover, in *Kidd,* this court ruled that Kayla's statements were not admissible under § 491.075. *Id.* at 179. Thus, it is rather disingenuous for the state to here argue that the statements are admissible by virtue of the statute.

■ Section 491.075 specifically refers to statements by a child concerning offenses under Chapters 565, 566, and 568.[2] Scholars and legislators have long debated the proper scope of children's testimony. *State v. Williams,* 729 S.W.2d 197, 199 (Mo. banc 1987). The goal of the courts is to find the proper balance between the rights of the accused and the concerns of the child. *Id.* Section 491.075 allows the "admission, as substantive evidence, of an out-of-court statement made by a child who is an alleged victim of an offense under Chapter 565, 566 or 568." *State v. McGuire,* 892 S.W.2d 381, 385 (Mo.App. E.D.1995). In order to maintain the delicate balance of preserving the rights of the accused and protecting the security of the child, it is essential that courts strictly construe § 491.075 to restrict the admissibility of statements and testimony to actual victims of offenses. Although Kayla is an important witness to the crimes, she is not a victim of the offenses. Therefore, her statements are not admissible under § 491.075.

■ Nevertheless, Kayla's statements are admissible on other grounds. A trial court's admission of evidence will be sustained as long as it is sustainable under any theory. *State v. Worrel,* 933 S.W.2d 431, 436 (Mo.App. W.D.1996). The trial court is given broad discretion over the relevancy and admissibility of evidence. *State v. Collins,* 962 S.W.2d 421, 424 (Mo. App. W.D.1998). We will not reverse such determination short an abuse of discretion. *Id.* A lower court's decision to admit evidence will warrant reversal where the admission prejudices the defendant. *Id.* Unless the erroneously admitted evidence materially affects the merits of the judgment, the judgment will not be reversed. *State v. Larson,* 941 S.W.2d 847, 854 (Mo. App.1997). Our review of prejudice will result in a reversal only if the admitted evidence was so prejudicial that it deprived

**2.** Chapters 565, 566, and 568 are titled Offenses Against the Person, Sexual Offenses, and Offenses Against the Family, respectively. Offenses against the family include such acts as incest and child abuse.

the defendant of a fair trial. *State v. Richardson*, 923 S.W.2d 301, 311 (Mo. banc 1996).

■ Merrill's claim that hearsay evidence was improperly admitted against him can be thought of as two separate issues: Kayla's statements regarding the events surrounding the murders and her statements of identification. We turn our initial attention to events concerning the murder. Kayla's statements are consistent with the testimony of the other witnesses. George Washington, Shannon Harris, and Richard Harris all witnessed Black men dressed in black with a light car at the crime scene. Even if Kayla's statements regarding events of the day of the murders were erroneously admitted, there was no prejudice because there was other evidence before the court which established the same facts. *State v. Shaw*, 915 S.W.2d 775, 783 (Mo.App. W.D.1996).

■ The second issue concerning Kayla's statements involves her out of court identification of Merrill. These statements are admissible as prior inconsistent statements. Section 491.074 specifically deals with prior inconsistent statements in a murder trial. *State v. Lyons*, 951 S.W.2d 584, 595 (Mo. banc 1997). The statute provides:

> Notwithstanding any other provisions of law to the contrary, a prior inconsistent statement of any witness testifying in the trial of an offense under chapter 565, 566 or 568, RSMo, shall be received as substantive evidence, and the party offering the prior inconsistent statement may argue the truth of such statement.

■ Section 491.074 clearly states that the "prior inconsistent statement of *any* witness testifying in the trial ... shall be received as substantive evidence" in a trial involving a Chapter 565 offense. *Lyons*, 951 S.W.2d at 595. "Therefore, any prior inconsistent statements are admissible solely on this basis." *Id.* At trial Kayla testified that Merrill had only shot Oscar Bridges. Yet in her earlier state-ment to Officer Guffey, Kayla claimed that Merrill had shot her father. Clearly, her statement to Detective Guffey constituted a prior inconsistent statement. A prior inconsistent statement is admissible as substantive evidence under § 491.074, regardless of whether it is true. *Id.* at 594.

In *Lyons*, a seven year old boy heard a gunshot from the upstairs of his house. *Id.* at 587. As the boy made his way up the stairs, he passed Lyons who was carrying a shotgun. *Id.* The boy found his grandmother lying dead on the kitchen floor. *Lyons*, 951 S.W.2d at 587. Meanwhile, in the basement Lyons shot and killed the boy's mother and half-brother. *Id.* The boy and his sister hid under a bed upstairs. *Id.* at 593. The state attempted to admit a videotape of the boy's statement to the police into evidence. *Id.* at 594. The boy testified that he did not remember hearing anybody speak while he was hiding under the bed. *Id.* at 593. This testimony contradicted his own statement to Officer Gregory four years earlier. *Lyons*, 951 S.W.2d at 593. The day of the murders, the boy had told Officer Gregory that Lyons said, "Where them kids at?," while he and his sister were hiding under the bed. *Id.* The court found that the videotaped statement was admissible under § 491.074. *Id.* at 595.

Likewise, we find Kayla's statements identifying Merrill to Detective Guffey admissible under § 491.074. Since the testimony is admissible, it is left to the jury to weigh the relative credibility of Kayla's out-of-court statement versus her testimony in court. *Id.* Appellate courts do not determine the credibility of the witnesses, nor do they weigh the evidence. *State v. Wilbon*, 874 S.W.2d 541, 542 (Mo.App. E.D.1994). "The jury is the sole arbiter of credibility and may believe all, some, or none of a witness's testimony." *Id.* Here, the jury apparently believed Kayla's out of court statements to the police to be more reliable than her in court testimony. "[I]t is common for the testimony of a child of tender years to contain some variations,

contradictions, and memory lapses." *State v. Werneke,* 958 S.W.2d 314, 319 (Mo.App. W.D.1997). After considering that Kayla's statements to Officer Guffey were much closer in time to the murder than her subsequent testimony and that a courtroom can be an unfamiliar and intimidating environment to a child, it is reasonable to believe that her original statements were more accurate than her testimony. Since a determination of Kayla's credibility is properly in the domain of the jury, we find no error. *State v. Harper,* 884 S.W.2d 362, 364 (Mo.App. E.D.1994). Point one is denied.

As his second point on appeal, Merrill claims the trial court erred in overruling his motion for a judgment of acquittal. First, Merrill argues that he was never identified as a participant in either the murders or the armed criminal action. This argument is without merit. At trial, Kayla identified a photograph of Merrill as one of the assailants who killed her father and Oscar Bridges. Detective Guffey testified that Kayla made two positive identifications of Merrill's picture as one of the men involved in the homicides. The record contradicts Merrill's assertion that he was not identified as a participant in the crime.

Second, Merrill contends that there was not evidence beyond a reasonable doubt that he participated in the deliberate killing of either victim. When an appeal raises the question of the sufficiency of the evidence, we consider the facts and all reasonable inferences drawn from those facts in the light most favorable to the verdict and reject all contrary evidence and inferences. *State v. Burkemper,* 882 S.W.2d 193, 196 (Mo.App. E.D.1994). The standard for this court to apply is whether there is sufficient evidence for reasonable people to find the defendant guilty. *Id.*

Merrill claims that Kayla's testimony contradicts her statements to the police, creating sufficient reasonable doubt to acquit. But the testimony of a single witness is enough to support a conviction even if that testimony is inconsistent. *State v. Bell,* 936 S.W.2d 204, 207 (Mo.App. W.D.1996). The jury is charged with resolving any inconsistencies. *Id.* Since we are faced with a question concerning the weight of the identification testimony, it is not subject to our review. *State v. Timmons,* 584 S.W.2d 129, 133 (Mo.App. S.D. 1979). Instead, we are limited to determining whether the identification is admissible. We have found it was admissible. The weight and credibility of the identification testimony was for the jury. *Id.* at 133–34. The jury made that determination in this case, and by its guilty verdict, satisfied itself on the issue. *Id.* at 134.

Merrill's third point on appeal is that the trial court committed plain error in finding him to be a prior and persistent offender. Section 558.021.1 governs the procedures necessary to sentence a defendant as a prior and persistent offender.[3] Merrill claims the state did not comply with § 558.021.1 when it failed to plead his prior convictions in the indictment. He contends the state was allowed to prove his prior offender status without providing

3. Section 558.021.1 provides:

1. The court shall find the defendant to be a prior offender, persistent offender, dangerous offender, persistent sexual offender or predatory sexual offender if:
(1) The indictment or information, original or amended, or the information in lieu of an indictment pleads all essential facts warranting a finding that the defendant is a prior offender, persistent offender, dangerous offender, persistent sexual offender or predatory sexual offender; and

(2) Evidence is introduced that establishes sufficient facts pleaded to warrant a finding beyond a reasonable doubt that the defendant is a prior offender, persistent offender, dangerous offender, persistent sexual offender or predatory sexual offender; and
(3) The court makes findings of fact that warrant a finding beyond reasonable doubt by the court that the defendant is a prior offender, persistent offender, dangerous offender, persistent sexual offender or predatory sexual offender.
§ 558.021.1 RSMo (Supp.1998).

him with any notice of their intention to do so, resulting in a denial of his due process rights.

Before submitting the case to the jury, the state attempted to prove Merrill's status as a prior and persistent offender. The court noted that the state failed to file an amended information charging Merrill as a prior offender or a persistent offender. In response, the prosecutor stated in relevant part, "For the purpose of sentencing the prior doesn't have to be put in the charging document, is my understanding, your Honor." When Merrill's counsel failed to object, the state offered proof of the appellant's prior convictions in the form of two exhibits. Merrill's attorney did not object to either exhibit, and indeed, specifically stated that she had no objection to the state's exhibits or their admission.

Merrill now contends that it was plain error for the trial court to sentence him as a prior and persistent offender, citing *State v. Street*, 735 S.W.2d 371 (Mo.App. W.D.1987). In *Street*, the defendant was convicted of failure to appear and answer to criminal charges. The Information in the case did not charge Street as a prior and persistent offender, nor did the state move to amend. Nevertheless, the state presented evidence of Street's three previous felony convictions, and the trial court made a finding that the defendant was a prior and persistent offender and sentenced him accordingly. The issue was not raised by Street until his appeal. On appeal, this court found that the "error is manifest." *Id.* at 373. In doing so, the court stated:

> The statute is abundantly clear that an extended sentence term may be imposed if, but only if, " * * * the indictment or information, original or amended, or the information in lieu of an indictment pleads all essential facts warranting a finding that the defendant is a prior offender, persistent offender, or dangerous offender * * *." It is not enough

for the state to simply announce an intention to seek an extended sentence, the charge must set out the facts which would, if later substantiated by the proof, warrant the court in making the findings which are also a requirement of the statute. **If the courts continue to indulge the laxity which has characterized so many cases of extended term sentencing, a judicial emasculation of the legislative direction will be the accepted procedural norm.**

*Id.* (Emphasis added). As a result, the court entered a limited remand for the purposes of permitting the state to amend the information and submit proof supporting repeat offender sentencing. *Id.* at 374. *Street* was subsequently followed by the Eastern District of this court in *State v. Hutton*, 825 S.W.2d 883, 888–89 (Mo.App. E.D.1992) and *State v. Foster*, 949 S.W.2d 215, 217–18 (Mo.App. E.D.1997). *See also State v. Lowery*, 926 S.W.2d 712, 713 (Mo. App. E.D.1996); *State v. Knight*, 920 S.W.2d 612, 613–14 (Mo.App. S.D.1996); *State v. Martin*, 882 S.W.2d 768, 772 (Mo. App. E.D.1994); and *Croney v. State*, 860 S.W.2d 17, 18 (Mo.App. E.D.1993).

We conclude that Merrill's situation is governed by *Street* and its progeny. The state clearly did not comply with the statute because the it did not plead "all essential facts warranting a finding that [Merrill] is a prior . . . [and] persistent offender." § 558.021.1. As in *Street*, however, Merrill is entitled only to a limited remand for the purposes of permitting the state to amend the information and submit proof supporting prior and persistent offender sentencing. "In the unlikely event that the proof were to fail, a new trial is, of course, required." *Street*, 735 S.W.2d at 374.

As his fourth and final point on appeal, Merrill claims the trial court abused its discretion by failing to sever his trial from that of his co-defendant, Ricky

Kidd. Merrill bases this claim on his assertion that a joint trial was prejudicial. Rule 24.06 [4] and § 545.880.2 [5] deal with the procedure for severing joint trials. Both Rule 24.06 and § 545.880.2 require separate trials where the probability for prejudicing one defendant exists in a joint trial. *State v. Isa*, 850 S.W.2d 876, 884–85 (Mo. banc 1993). The defendant bears an affirmative duty under Rule 24.06 and § 545.880 to demonstrate that a joint trial prejudiced his right to a fair trial. *Id.* at 885.

■ Although Merrill cites several instances of evidence that he claims are only admissible against his co-defendant, he ignores the fact that since he was charged as acting in concert with Kidd, anything admissible against Kidd is also admissible against him as an accomplice. It is a long recognized principle in Missouri that when two people act in concert in committing an offense, the acts of either individual, in furtherance of that offense are admissible. *State v. Daugherty*, 631 S.W.2d 637, 643 (Mo.1982).

■ Joint trials "play a vital role in the criminal justice system." *Richardson v. Marsh*, 481 U.S. 200, 209, 107 S.Ct. 1702, 1708, 95 L.Ed.2d 176 (1987). Joint trials further the interests of justice by avoiding inconsistent verdicts and leading to more accurate assessments of relative culpability. *Id.* at 210, 107 S.Ct. at 1709. Therefore, sometimes joint trials benefit the defendants. *Id.* For these reasons, courts traditionally favor joint trials. *Isa*, 850 S.W.2d at 885. Courts will only grant motions to sever where there is a serious risk of compromising the defendant's rights or the jury's ability to make a fair judgment. *Id.*

■ Merrill has failed to demonstrate any prejudice resulting from the trial court's decision not to sever the trials. *See Kidd*, [990 S.W.2d] at 180 – 181. Whether to sever a joint trial is a decision reserved for the trial court and that will only be overturned in the event of an abuse of discretion. *Id.* We find no abuse of discretion. Point four is denied.

The judgments of conviction are affirmed. The imposition of sentence is reversed and the cause is remanded for the purpose of resentencing if, upon amendment of the information and rehearing, the findings of the court support imposition of sentence upon Merrill as a prior and persistent offender. If he is not found to be a

4. Rule 24.06(b) provides in relevant part:

A defendant shall be ordered to be tried separately only when the defendant files a written motion requesting a separate trial and the court finds a probability of prejudice exists or:
(1) The defendant is subject to assessment of punishment by the jury and the defendant shows a probability of prejudice would result from this fact if he is not tried separately; or
(2) There is, or may reasonably be expected to be, material and substantial evidence not admissible against the defendant that would be admissible against other defendants if a separate trial is not ordered;

5. Section 545.880.2 states:

If, upon written motion of the defendant, the court finds that the probability for prejudice exists in a joint trial, the court shall order the severance of defendants for trial.

The court shall find that the probability for prejudice exists if:
(1) At least one but not all of the defendants jointly charged is, if convicted, subject to jury assessment of punishment; the defendant or defendants subject to jury assessment of punishment shall have the burden of showing the probability of prejudice if tried jointly;
(2) There is, or may reasonably be expected to be, material and substantial evidence admissible against less than all of the joint defendants;
(3) There exists an out of court statement of a codefendant which makes reference to another of the joint defendants, but is not admissible against that defendant, and if the statement cannot be properly limited so as to eliminate reference to the complaining defendant;
(4) Severance of the joint defendants is necessary to achieve a fair determination of guilt or innocence of any defendant.

prior and persistent offender, Merrill is granted a new trial.

All concur.